910 So.2d 726 (2005)
James R. COWART, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00418-COA.
Court of Appeals of Mississippi.
March 22, 2005.
*727 James Cowart, Appellant, pro se.
Edmund J. Phillips, attorneys for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before BRIDGES, P.J., IRVING, and MYERS, JJ.
MYERS, J., for the Court.
¶ 1. On December 6, 2001, Cowart was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor, having a blood alcohol level of .10 or greater, and negligently causing the death of Ronald Robinson, an offense commonly referred to as "DUI manslaughter," under Mississippi Code Annotated § 63-11-30. On February 14, 2003, Cowart was convicted and sentenced to serve eighteen years in the custody of the Mississippi Department of Corrections with credit for nine days served.
¶ 2. Aggrieved by his conviction, Cowart now appeals, raising the following six issues:
I. DID THE TRIAL COURT ERR IN ALLOWING DR. HAYNE TO TESTIFY AS AN EXPERT IN TOXICOLOGY?
II. DID THE TRIAL COURT ERR IN ALLOWING PATROLMAN CAIN TO TESTIFY AS AN ACCIDENT RECONSTRUCTION EXPERT?
III. DID THE TRIAL COURT ERR IN DENYING COWART'S MOTION TO SUPPRESS?
IV. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
V. DID COWART RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL?
VI. DID THE COURT ERR IN ALLOWING CERTAIN TESTIMONY REGARDING COWART'S BLOOD ANALYSIS?
¶ 3. Finding no reversible error, we affirm the judgment of the trial court.

FACTS
¶ 4. On December 6, 2001, Cowart was involved in a very serious car accident. As he was rounding a curve on a two-lane highway north of Ringo, Mississippi, he lost control of his truck and flipped over numerous times. Apparently, as he was reaching down to retrieve some object that was not identified in the record, his truck went off the road onto the shoulder. When he realized that he was driving on the shoulder, he jerked the wheel to get back on the road, and his truck then lost control and began flipping.
¶ 5. Unfortunately, another car was approaching from the opposite direction. As Cowart's truck was airborne, mid-flip, this approaching vehicle passed underneath the *728 flipping truck, making hood to hood or top to top contact between the two vehicles. The other vehicle made the rest of the curve in the direction it was originally traveling and finally ran off the road out of sight of where Cowart's truck finally landed. The driver of this other vehicle, Mr. Robinson, died from the injuries he suffered in this accident, while Cowart walked away from the accident virtually unharmed.
¶ 6. Since Robinson's car had rounded the curve out of sight before running off the road and since Cowart was inverted in mid-air when he made contact with Robinson's vehicle, Cowart was apparently unsure at first whether there was another vehicle involved in the accident. Thus, after speaking briefly to some nearby residents who were drawn to the scene of the accident by the noise it caused, Cowart caught a ride with a guest of one of the nearby residents and left the scene of the accident. The nearby residents also at first were unaware that there was another vehicle involved in the accident.
¶ 7. After reaching his stepfather's house, according to Cowart, he took a shower and started drinking beer to settle his nerves. A couple of hours later, his stepfather returned to the house and informed Cowart that there was another car involved in the accident. As soon as Cowart learned this, he returned to the scene and began cooperating with the police officers. The police officers testified that Cowart showed visible signs of intoxication when he returned to the scene, and Cowart admitted that by the time he returned to the scene he was drunk. Sometime later, the officers took Cowart to the hospital to be examined for injuries and also to receive a blood alcohol test. His blood alcohol level registered as .16, well in excess of the legal limit. However, the complicating factor in this case is that Cowart's blood was not tested for alcohol until roughly three hours after the accident occurred, and during two of those three hours in between the time of the accident and the blood test, Cowart was allegedly in his house drinking beer.
¶ 8. Because of this, Cowart maintains that he was not drunk at the time of the accident, but that he became drunk after the accident when he went home and started drinking beers to calm himself. The State maintains that Cowart was so drunk at the time of the accident, that he was still intoxicated three hours later, and that his going home to drink beer was an obvious attempt to cover up the fact that he was drunk at the time of the accident.

LEGAL ANALYSIS

I. DID THE COURT ERR IN ALLOWING DR. HAYNE TO TESTIFY AS AN EXPERT IN TOXICOLOGY?
¶ 9. In his first issue, Cowart argues that Dr. Hayne was improperly allowed to testify as an expert in an area beyond his expertise and that Dr. Hayne's allegedly improper testimony so prejudiced Cowart's defense that the judgment of the circuit court should be reversed.
¶ 10. The State argues that Dr. Hayne was, in fact, qualified to give the subject expert testimony and that, therefore, Cowart's argument is meritless.

STANDARD OF REVIEW
¶ 11. Our standard of review for challenges to the qualifications of an expert witness has been stated as follows:
The qualification of an expert in fields of scientific knowledge are left to the sound discretion of the trial court. Its determination on this issue will not be reversed unless it clearly appears that the witness is not qualified. Crawford v. State, 754 So.2d 1211, 1215 (Miss. *729 2000).... "This Court reviews the trial court's decision to allow expert testimony under the well-known clearly erroneous standard." Puckett v. State, 737 So.2d 322, 342 (Miss.1999). Similarly, an expert's testimony is always subject to M.R.E. 702. For a witness to give a M.R.E. 702 opinion, the witness must have experience or expertise beyond that of an average adult. Id.

Rogers v. Morin, 791 So.2d 815, 824(¶ 27) (Miss.2001). Thus, we generally defer to the discretion of the trial court in determining whether an expert is qualified to testify, and we will only reverse when there was clear error or clear abuse of discretion in the decision to admit the testimony. Id.; Chapin v. State, 812 So.2d 246, 249(¶ 8) (Miss.Ct.App.2002) (holding that "[t]he admission or exclusion of expert testimony is controlled by the trial court's discretion and this Court will not disturb the trial court's decision unless the trial court clearly abused that discretion.").

DISCUSSION
¶ 12. The question of whether Cowart was drunk at the time of the accident was, of course, the central issue in this case. The blood test that showed his alcohol level to be .16 was taken roughly three hours after the accident, and during two of those three hours Cowart testified that he was at his stepfather's house drinking beer. Cowart testified that during this time he drank roughly five beers. This became the thrust of Cowart's defense. He argued at trial and continues to argue now that the State did not prove that he was drunk at the time of the accident; rather, Cowart maintains, the State merely proved that he was drunk three hours later, after he had admittedly been at home drinking beer for two hours.
¶ 13. Dr. Hayne was initially called by the State to testify as to the cause of death of the victim, which he concluded to be from injuries sustained in the car wreck. However, after the defense rested, Dr. Hayne was recalled as a rebuttal witness to testify as an expert on rates of absorption and metabolism of alcohol. On rebuttal, Dr. Hayne testified that it was impossible for Cowart to have a blood alcohol level of .16 if he had only consumed four or five beers in two hours. Dr. Hayne also testified that, scientifically, the fact that Cowart's blood alcohol level was .16 three hours after the accident meant that his blood alcohol content was roughly .2 at the time of the accident. Thus, Dr. Hayne came to the stand after Cowart's case in chief and testified that it was scientifically impossible for Cowart's story to be true.
¶ 14. As soon as Dr. Hayne was called and the subject to which he was going to testify became known, Cowart's attorney objected, saying that Dr. Hayne, as a forensic pathologist, could not give expert testimony on toxicology. The trial judge overruled the objection and allowed the testimony. Cowart's attorney renewed this objection several times and later moved for a mistrial, but the court overruled all of these objections and denied the motion for mistrial. In allowing the testimony, the trial judge noted that Dr. Hayne was a doctor and, therefore, knew more about such things than the court or the attorneys did, and that Dr. Hayne appeared to have the necessary qualifications. On this basis, the judge allowed Dr. Hayne to testify as an expert on this particular toxicology question.
¶ 15. Cowart's argument, at first glance, appears to have some merit, in light of the fact that Dr. Hayne is a forensic pathologist, not a toxicologist, and in light of the fact that our courts have held that an expert may not testify to matters beyond his or her area of expertise. Chapin, 812 So.2d at 249(¶ 8). Yet, an examination *730 of the record shows that Cowart's argument lacks merit.
¶ 16. On the subject of qualifications of expert witnesses we have held:
A witness "qualified as an expert by knowledge, skill, experience, training, or education" may testify and offer opinions if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." M.R.E. 702. However, this Court will limit an expert's testimony to matters within his demonstrated area of expertise.
General Motors Acceptance Corp. v. Baymon, 732 So.2d 262, 272(¶ 49) (Miss.1999). Notably, the quote above declares that expert testimony will be limited matters within the witnesses's "demonstrated area of expertise." Id. Thus, Cowart is correct in arguing that an expert may not testify beyond his or her field of expertise. However, we find nothing in our law that would prohibit one from being qualified as an expert in more than one field.
¶ 17. If a witness has the required qualifications, as set forth in M.R.E. 702 and our case law, in more than one field, then our law does not prevent him or her from testifying as an expert in more than one field. Id.; Crawford v. State, 754 So.2d 1211, 1215-16(¶ 7) (Miss.2000) (holding that "[t]o express an M.R.E. 702 opinion the witness must possess some experience or expertise beyond that of the average, randomly selected adult. `[T]he test is whether a witness possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman.'"). Of course, the content of the testimony must meet the modified Daubert standard currently employed by our court in analyzing the relevance and reliability of testimony given by qualified experts, and that analysis might serve to limit the matters to which a qualified expert may testify; but the content of the testimony itself is not in question here. Mississippi Transp. Comm'n v. McLemore, 863 So.2d 31, 39-40 (¶¶ 21-25) (Miss.2003). Rather, the ultimate question here in the present case is whether Dr. Hayne was qualified to testify as an expert on the issue of metabolism and absorption of alcohol. Crawford, 754 So.2d at 1215-16(¶ 7)
¶ 18. We find that, contrary to Cowart's arguments, it does not logically follow that because Dr. Hayne is a forensic pathologist that, therefore, he must have inexpert knowledge of all matters pertaining to toxicology. The question of whether Dr. Hayne has expertise in certain toxicology matters is a separate question from whether he has expertise in forensic pathology, and, as noted, our law does not prohibit an expert witness from testifying to different subjects, provided that the expert is qualified to give expert testimony on each of the different subjects. Id.
¶ 19. That being the case, we turn to consider Dr. Hayne's qualifications in the area of toxicology. Interestingly, we note that the qualifications of Dr. Hayne in this subject area were established by Cowart's own questioning of Dr. Hayne on cross-examination. When Cowart's attorney cross-examined Dr. Hayne, he asked Dr. Hayne how he knew these things about toxicology and alcohol absorption. Dr. Hayne responded by saying that the subject is sometimes relevant to clinical and forensic pathology, the most obvious example of this being deaths caused by over-use or abuse of alcohol. Dr. Hayne also testified that the rates of alcohol absorption and metabolism are commonly known and accepted within the medical field. Thus, Dr. Hayne appears to have been qualified to give expert testimony on the particular toxicology question at issue because this *731 particular toxicology question fell within the range of Dr. Hayne's primary expertise in forensic pathology. Moreover, Dr. Hayne, by virtue of being a doctor, may have been sufficiently qualified to testify to a particular toxicology question that touched upon subjects commonly known to doctors, but unknown to laypersons.
¶ 20. We note that this is not the first time that Dr. Hayne has been allowed to testify to matters seemingly beyond the realm of forensic pathology. For instance, in the case of Dycus v. State, 875 So.2d 140, 155-56 (¶¶ 51-52) (Miss.2004), Dr. Hayne was held to be qualified to testify as an expert on a question bordering very close to ballistics. His testimony was allowed, however, because the particular question was so closely related to his expertise and experience as a forensic pathologist. Id. This expertise and experience within the particular field of forensic pathology was held to give him a specialized knowledge beyond the level of a layperson sufficient to allow him to give the particular testimony in that case. Id. Thus, the Dycus case contravenes Cowart's argument by holding that Dr. Hayne's expertise in forensic pathology is not necessarily a limiting factor as to the range of subjects about which he may conceivably testify. In the Dycus case, the court related his expertise in forensic pathology to the particular testimony sought to be elicited and found that he was qualified to give the particular testimony. Id.
¶ 21. Our review of the record reveals that it was not clear error or abuse of discretion for the court to find Dr. Hayne qualified to testify on the subject of metabolism and absorption of alcohol. On the contrary, Dr. Hayne appears to have been sufficiently qualified to testify to the metabolism and absorption rates of alcohol, and, significantly, Cowart's own questioning of Dr. Hayne on cross-examination revealed this fact. Because of this, we cannot say that the lower court committed clear error or clearly abused its discretion in allowing this testimony.
¶ 22. Cowart, as a sub-argument, also contends that Dr. Hayne was not formally tendered as an expert and that this failure to formally tender Dr. Hayne as an expert was reversible error. In support of this, Cowart cites to the cases of Sample v. State, 643 So.2d 524 (Miss.1994), and Walker v. State, 740 So.2d 873 (Miss.1999). Upon review of the record, we find that Cowart did not object to the failure to formally tender Dr. Hayne. In both of the cases cited by Cowart, the challenged testimony, given by witnesses not tendered as experts, was allowed over objection. Sample, 643 So.2d at 529; Walker, 740 So.2d at 881(¶ 29). Therefore, we find that Cowart has not preserved this argument for review, because he did not object to the failure to formally tender Dr. Hayne as an expert. In addition, we incorporate our discussion of issue II below into our consideration of this sub-argument, as the two raise identical issues.

II. DID THE COURT ERR IN ALLOWING PATROLMAN CAIN TO TESTIFY AS AN ACCIDENT RECONSTRUCTION EXPERT?
¶ 23. Cowart argues that it was error for the court to allow the accident reconstructionist to testify as an expert because he was not formally tendered as an expert. The State argues that Cowart has failed to preserve this issue for review by failing to object at the trial.

STANDARD OF REVIEW
¶ 24. This issue, since it also deals with the court's acceptance of a witness as an expert, implicates the same standard of review as employed under issue I, namely, the clearly erroneous/abuse of discretion *732 standard. Rogers, 791 So.2d at 824(¶ 27); Chapin, 812 So.2d at 249(¶ 8).

DISCUSSION
¶ 25. The record reveals that from the questions the State posed to Patrolman Cain regarding his qualifications, there can be no doubt that he was qualified; however, counsel failed to formally tender Patrolman Cain as an expert in his field. Thus, Cowart correctly points out that this expert was not formally tendered. But, the record also reveals that there was no objection to Patrolman Cain's qualification as an expert. The rules of evidence and our case law make clear that a contemporaneous objection is required to be made at the trial in order to preserve an assignment of error for review. M.R.E. 103(a)(1); Denson v. State, 746 So.2d 927, 932(¶ 17) (Miss.Ct.App.1999); McBeath v. State, 739 So.2d 451, 454(¶ 11) (Miss.Ct. App.1999).
¶ 26. Therefore, even though Patrolman Cain was not formally tendered as an expert, Cowart has not preserved this issue for appeal, since he did not object to the failure to tender the witness as an expert. Moreover, Cowart cross-examined this witness and posed various questions to him within the realm of his stated expertise. Therefore, since Cowart failed to object and since he further accepted and cross-examined the witness as an expert, we find that there was no reversible error in allowing Patrolman Cain's testimony, in spite of the failure to comply with the formality of tendering him as an expert. This issue is without merit.

III. DID THE COURT ERR IN DENYING COWART'S MOTION TO SUPPRESS?
¶ 27. Cowart argues that the trial court should have granted his motion to suppress certain incriminating statements made to law enforcement officers at the scene of the accident. He argues that he was too intoxicated to knowingly and voluntarily waive his Miranda rights and that since the officers knew, or at least suspected, him to be intoxicated when they questioned him, they should have been all the more careful to protect his rights. The State argues that Cowart was not so intoxicated as to not know what he was saying or being asked and that, therefore, he did knowingly and voluntarily confessed to drinking numerous beers before the accident.

STANDARD OF REVIEW
¶ 28. Regarding the standard of review for challenges to the voluntariness of a confession, we have held, "Once the trial judge determines that a confession is admissible, his finding becomes a finding of fact that will not be reversed on appeal unless it is manifestly in error or contrary to the overwhelming weight of the evidence." Cabello v. State, 490 So.2d 852, 856 (Miss.1986) (citing Frost v. State, 483 So.2d 1345 (Miss.1986); Gavin v. State, 473 So.2d 952 (Miss.1985)); see also McGowan v. State, 706 So.2d 231, 235(¶ 11) (Miss.1997).

DISCUSSION
¶ 29. Officer Timothy Gandy, formerly of the Scott County Sheriff's Office, and Corporal Billy Ray Atkinson of the Highway Patrol testified that Cowart made incriminating statements to them when Cowart returned to the scene of the accident. Among these statements were the following: that he had drank four or five beers the night of the accident, that he and his boss had bought a twelve pack before the accident and that they had consumed it, that he had purchased more beer after consuming the twelve pack, and that he was drunk. Cowart moved to have these statements suppressed because, due *733 to Cowart's intoxication, he could not have knowingly waived his Miranda rights or given a voluntary confession.
¶ 30. The case of Baggett v. State says that intoxication can render a confession involuntary, but the Baggett court also declared, "This Court has held that `[i]ntoxication... does not automatically render a confession involuntary. The admissibility of a confession depends upon the degree of intoxication.'" Baggett v. State, 793 So.2d 630, 634(¶ 9) (Miss.2001) (quoting O'Halloran v. State, 731 So.2d 565, 571(¶ 18) (Miss.1999)).
¶ 31. The court in the case sub judice overruled the motion and held that both of the officers testified that although Cowart showed some signs of intoxication, he was still coherent, understood what was going on, and was able to carry on a reasonable conversation. On the basis of the officers' testimony, the trial judge denied the motion to suppress. Based upon our review of the record, we cannot say that this ruling was manifestly erroneous, nor can we say that this ruling went against the overwhelming weight of the evidence. Therefore, we find this issue to be without merit.

IV. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 32. Cowart argues that the judgment of the circuit court should be reversed because the verdict went against the overwhelming weight of the evidence. The State argues that the weight of the evidence supports the jury's verdict.

STANDARD OF REVIEW
¶ 33. Our standard of review for challenges based upon the weight of the evidence has been stated as follows:
This Court's standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows: In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict.
Cousar v. State, 855 So.2d 993, 998(¶ 15) (Miss.2003) (citations omitted).

DISCUSSION
¶ 34. Among the evidence presented by the State was the following: testimony given by Ms. Jochimsen, an expert designated in the field of forensic toxicology, who testified that Cowart's blood alcohol level was .16, and the testimony of the investigating officers at the scene, who testified to statements Cowart made about how much alcohol he had consumed during the night. In addition, there were various photographs of the accident scene showing that there were empty beer cans inside of Cowart's vehicle and all around the site of the accident. Other photographs also showed an unopened six pack of beer inside the truck. Testimony of the officers showed that this unopened six pack was cold, and, therefore, very likely purchased close in time to the accident. Testimony of the officers also showed that there was a trail of empty beer cans leading from the point that Cowart's vehicle started to flip to the point where it landed.
¶ 35. Based upon this, we cannot say that the verdict was against the overwhelming weight of the evidence; on the *734 contrary, when we take this evidence as true and construe the other evidence revealed by our review of the record in the light most favorable to the verdict, we must conclude that the verdict was supported by the weight of the evidence. Therefore, we find this issue to be without merit.

V. DID COWART RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 36. These last two issues were raised in a supplemental brief filed by Cowart, pro se. Cowart's appellate counsel prepared his original appellant's brief. Later, however, Cowart filed a request to the supreme court asking to be allowed file this supplemental brief pro se. The supreme court granted his request, and he filed his supplemental brief raising these last two issues.
¶ 37. He argues first that his constitutional rights were violated because he received ineffective assistance of counsel. The State argues that there is no factual basis for Cowart's claim for ineffective assistance.

STANDARD OF REVIEW
¶ 38. We review claims of ineffective assistance of counsel using the two-part test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two parts of the Strickland test, both of which must be shown in order to prevail on a claim of ineffective assistance of counsel, are: (1) counsel's performance must have been deficient, and (2) that deficiency must prejudice the defense's case. Id.; Hall v. State, 735 So.2d 1124, 1127(¶ 6) (Miss.Ct.App.1999). Significant for our purposes here, regarding the first part of the test, the Strickland court declared, "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.

DISCUSSION
¶ 39. Very simply, the record shows that Cowart's trial counsel performed well within the range of reasonable professional assistance; therefore, we cannot say that Cowart's counsel was deficient. Therefore, the first part of the Strickland test is lacking, and, because of this, we need go no further in discussing this issue. Cowart's claim of ineffective assistance is without merit.

VI. DID THE COURT ERR IN ALLOWING CERTAIN TESTIMONY REGARDING COWART'S BLOOD ANALYSIS?

DISCUSSION
¶ 40. Cowart's specific framing of this last issue is worth noting. In his second argument in the supplemental brief, he declares, "The court erred when overuling [sic] the objection of the defence [sic] and allowing someone other than the person who done [sic] the blood analysis to testify about the blood analysis, without the person being their [sic] who done [sic] the blood analysis." While admittedly we find this last issue be framed somewhat inartfully, it appears that Cowart is arguing that the forensic toxicologist should not have been allowed to render an opinion at trial because she was not the person who analyzed the blood sample.
¶ 41. In support of this, he cites to the case of Kettle v. State, 641 So.2d 746, 749-50 (Miss.1994). The Kettle case dealt with whether a lab report of controlled substances was admissible when the person who prepared the report was unable to testify at the trial. Id. There, the court held that the defendant should be allowed to cross-examine the actual person who *735 prepared the report. Id. Primarily, however, the Kettle case was dealing with whether a drug report from the crime lab fell within the business records exception to the hearsay rule. Id.
¶ 42. This issue plainly lacks merit. Cowart has misunderstood what took place at trial. Not only do we not find any objection in the record to the testimony of April Harrelson, the person who drew the blood that was analyzed, or of Emily Jochimson, the person who analyzed the blood at the crime lab, but we also find that the person who analyzed the blood at the crime lab, Emily Jochimson, was, indeed, the forensic toxicologist who testified at trial. Thus, the Kettle case is not only distinguishable from the present case, but it is also clearly inapplicable. Based upon the content of this assignment of error, it is evident Cowart has misunderstood some of what took place at trial, and this argument clearly lacks merit.
¶ 43. Having found no merit to any of Cowart's assignments of error, we find that the judgment of the circuit court should be affirmed.
¶ 44. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF CONVICTION OF DUI MANSLAUGHTER AND SENTENCE OF EIGHTEEN YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH NINE DAYS CREDIT FOR TIME SERVED IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.