ROBERTS, J.,
for the Court.
¶ 1. Glenn Beckham lost control of his vehicle on October 11, 2000, striking a culvert and severely injuring himself. On January 3, 2003, Beckham filed a lawsuit alleging that General Motors Corporation (“GM”) was negligent in that the air bag installed in his vehicle failed to deploy and that GM breached express and implied warranties of fitness for use. After a three day trial, the jury returned a verdict in favor of GM. Aggrieved by this, Beck-ham now appeals. Finding no error, we affirm.
FACTS
¶ 2. While driving, Beckham waved at a friend and lost control of his 2000 GMC Sierra pickup truck. The truck crossed the opposite lane of travel and collided with a drain culvert on the opposite side of the road causing the truck to possibly become airborne, land on the other side of the culvert and face the opposite direction. At no time throughout the accident did the air bag of Beckham’s truck deploy. As a result, Beckham suffered several injuries, one of which was a severe laceration to his forehead.
¶ 3. Beckham hired Chris Gilley, an accident reconstructionist and mechanical engineer, to reconstruct the accident and, if possible, explain why the air bag did not deploy. Subsequent to voir dire and an offer of proof, the lower court ruled that Gilley was not an expert in either biome-chanics or air bags, and could not give his opinion as to air bag operation. Gilley was allowed to give his expert opinion as it pertained to accident reconstruction and mechanical engineering. The details of Gilley’s testimony, voir dire and the lower court’s decision excluding parts of his testimony will be discussed below.
¶ 4. At the conclusion of the jury’s deliberations, they returned a verdict for GM and the lower court entered a judgment on that verdict. Believing he was denied a fair trial as a result of the exclusion, Beck-ham Files this appeal.
*1024 ANALYSIS AND DISCUSSION
¶ 5. The standard of review for the lower court’s admission or suppression of evidence, to include expert testimony, is an abuse of discretion standard. Tunica County v. Matthews, 926 So.2d 209(¶ 5) (Miss.2006). In order for us to find that the lower court abused its discretion, its decision must have been arbitrary and clearly erroneous. Id.
I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING PORTIONS OF GIL-LEY’S TESTIMONY.
¶ 6. Beckham argues that the exclusion of portions of Gilley’s testimony constituted reversible error and, in light of the relevant standard, asserts that the lower court abused its discretion in doing so. Specifically, Beckham asserts that Gilley should have been allowed to testify as to the “various components of the air bag system, explain how they worked, and talk about how the data from the different forces ... were utilized by the air bag system ...”
¶ 7. An expert witness must possess that skill, knowledge or experience in the field in which he purports to render expert testimony to make it appear that his opinion or inference will probably aid the trier in its search for truth. Seal v. Miller, 605 So.2d 240, 247 (Miss.1992). This is not to say that the purported expert possess knowledge and experience of the highest degree, only peculiar knowledge regarding the “relevant subject matter which is not likely to be possessed by laymen.” Id., (citing Henry v. State, 484 So.2d 1012 (Miss.1986) (citations omitted)). Further, a trial court may restrict an expert’s testimony to matters within his or her area of expertise. Cowart v. State, 910 So.2d 726(¶ 15) (Miss.Ct.App.2005). If it is found that the trial court did, in fact, abuse its discretion, the case will only be reversed if it is shown that the error resulting from the abuse of discretion resulted in actual prejudice or a substantial right of the aggrieved party being adversely affected. Windmon v. Marshall, 926 So.2d 867(¶ 38) (Miss.2006) (citing Busick v. St. John, 856 So.2d 304(¶47) (Miss.2003) (citations omitted)).
¶ 8. Given this legal backdrop, we now turn to Gilley’s pertinent qualifications. Gilley’s educational background included a bachelor’s degree in mechanical engineering and a masters of business administration with an emphasis in econometrics. Previous to Gilley beginning his own engineering firm, he worked for several years in a variety of engineering positions for other employers. Namely, Gilley worked as a quality assurance engineer, a field manager for a large equipment firm where he set-up and serviced “electro-me-chanical” machines, and as a forensic engineer during several construction projects. While running his own firm during the seven years preceding his trial testimony, Gilley had completed or was working on ten to eleven cases involving vehicular accidents that involved reconstruction. Additionally, Gilley completed a two month accident reconstruction course during his investigation of Beckham’s vehicle. Lastly, Gilley testified that this was his first alleged air bag defect case, but because of his engineering background he understood the air bag, its components and how it operated. During voir dire by opposing counsel, Gilley testified that he had never designed or tested an air bag or components of an air bag system. At the conclusion of voir dire Gilley was accepted as an expert in accident reconstruction and mechanical engineering.
¶ 9. After extensive questioning by the trial court, he was allowed to testify, over objection, to many points paramount to Beckham’s case. He testified that, after *1025 examining the multitude of documents GM supplied him regarding the various tests they conducted concerning air bag deployment, the delta V, or change in velocity, required for deployment of an air bag in the type of vehicle Beckham was driving at the time of the accident was sixteen miles per hour. At that delta V, Gilley testified he identified 100% deployment in GM’s testing. Next, Gilley told the jury that he calculated the delta V of the accident in question to be twenty-nine miles per hour at the point of first impact. He further testified that at that moment, based off of the GM tests he reviewed, the air bag should have deployed. He was further allowed to testify that it was his opinion that Beckham received the cut to his forehead as a result of striking the steering wheel. As it usually turns out with battling experts, GM’s expert contradicted this testimony.
¶ 10. Gilley was not allowed to testify as to how the air bag components worked or how the various forces at work during Beckham’s accident influenced the air bag’s operation. Additionally, Gilley was not allowed to testify regarding what Beckham’s injuries would have been if the air bag had deployed. As his experience and educational background indicate, this was not an abuse of judicial discretion. This was Gilley’s first case involving an allegedly defective air bag, and while that by itself is not fatal, his lack of history in working with or studying the internal workings of an am bag module east doubt on his expertise in such an area. Additionally, even if Gilley was deemed an expert in air bag module operation, Beckham’s plea would still fail as, based on Gilley’s allowed testimony, Beckham suffered no prejudice as a result of the lower court’s limitations set on Gilley’s testimony. While he did generally describe the internal workings of an air bag module during the proffer, Gilley himself indicated that he was only using that information to determine if the air bag should have fired or not. As stated supra, he testified that based on the data he received from GM and his calculations of the accident, the air bag should have fired. Exclusion of the additional information regarding a technical description of air bag operation did not deny Beckham a fair trial.
¶ 11. The question concerning Gilley’s testimony of Beckham’s probable injuries had the air bag deployed is also without merit, and likely moot based on the discussion supra. Gilley offered no specific instances of educational or practical experiences in regard to biomechanics other than generally touching on the subject in his course of study and practice of accident reconstruction. Based upon that, we can not say that the trial court clearly abused its discretion in excluding the testimony.
¶ 12. We find that the trial court did not abuse its discretion in limiting Gilley’s testimony, and, therefore, we affirm the final judgment as entered by the Circuit Court of Jackson County in favor of General Motors Corporation and against Glenn Beckham.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ„ CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.