CARLTON, J.,
Dissenting:
¶ 23. The majority opinion states that it reads Porter v. State, 749 So.2d 250 (Miss.Ct.App.1999), to stand for the proposition that in a DUI per se case, the defendant cannot offer evidence regarding whether or not she was under the influence, impairing her ability to drive a vehicle. I agree with that portion of the majority’s reading of Porter. However, the majority further explains that it does not read Porter as holding that in a DUI per se case,[6] evidence regarding the consumption of alcohol cannot be introduced to prove whether or not the defendant’s blood alcohol content (BAC) was below the legal limit when she was operating a motor vehicle. I disagree with this portion of the majority’s reading of Porter, and I respectfully dissent.
¶ 24. This Court examines a trial judge’s admission or exclusion of evidence for abuse of discretion. Smith v. State, 942 So.2d 308, 313(¶ 11) (Miss.Ct.App.2006). “Even if this Court finds an erroneous admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party.” Id.
¶25. In Porter, this Court found no merit to Porter’s argument that the trial court erred when it denied Porter the opportunity to offer evidence that his ingestion of alcohol had not impaired his ability to operate his truck. Porter, 749 So.2d at 254-55(¶ 13). In the case before us, Evans is similarly trying to introduce evidence of ingestion in order to argue that she was not over the legal limit, even though this is a DUI per se case. Evans was shown to be over the legal limit through a chemical analysis, and her attempt to bring in evidence of consumption of alcohol is simply a subterfuge to escape the limitations of the DUI per se statute and of our holding in Porter.
¶ 26. The Court in Porter explained that there was no evidence to weigh against the reliability of the Intoxilyzer machine’s analysis of his BAC. Porter, 749 So.2d at 257(¶ 24). Similarly, Evans offers no evidence that the Intoxilyzer was not working properly, was not calibrated properly, or that the chemical analysis reading was otherwise unreliable. Instead, Evans sought to introduce evidence of her consumption of alcohol, her particular absorption rate, her gender, and her wreight to argue that she would have tested at a lower BAC had she been tested at the time she was stopped. This evidence was inadmissible under our ruling in Porter, and the trial judge did not err in refusing to allow it.
¶ 27. Evans emphasizes the fact that her BAC was not tested until more than one hour after her arrest. I find that to be a reasonable delay, and I respectfully submit that such a finding would be supported by legislative intent based upon my review of the statutory guidelines and case law. Even in DUI cases involving a death, the Legislature requires only that the defendant’s BAC be tested within two hours, if possible. Miss.Code Ann. § 63-11-8(1) (Rev.2004). In Wash v. State, 790 So.2d 856, 859(¶ 10) (Miss.Ct.App.2001), this Court upheld admission of a BAC test which had not been obtained within the *1071 two-hour time frame suggested by the Legislature, stating:
The statute provides that the test is to be administered within two hours of the accident “when possible.” Miss.Code Ann. § 63-11-8 (Rev.2000). The words “when possible” are relevant here. Were this two[-]hour time frame necessary to ensure the integrity of the test results, it is doubtful that the [Ljegisla-ture would have included such language in the statute. The trial judge found that although the blood test was administered more than two hours after the accident, there was no evidence of deliberate delay on the part of the officers. We agree, and we see no reason to find that the time lapse between the accident and the administration of the blood test was prejudicial to Wash in any way.
There is no evidence of any deliberate delay on the part of the officers in Evans’s case. The delay was attributed to waiting on a tow truck to tow Evans’s car and the drive back to the Monroe County Sheriffs Office.
¶ 28. I further disagree with the majority’s rebanee on Cowart v. State, 910 So.2d 726 (Miss.Ct.App.2005) and Smith v. State, 942 So.2d 308 (Miss.Ct.App.2006). The majority contends those cases allowed expert testimony-similar to the testimony Evans sought to introduce — in DUI per se cases which involved a time lapse between when the defendant was driving and when the BAC test was administered. However, Cowart and Smith were both charged under Mississippi Code Annotated section 63-11-30(5) (Rev.2004) and not under the DUI per se statute. The applicable portion of section 63-11-30(5), which was at issue in Coivarl and Smith, states:
Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another or mutilates, disfigures, permanently disables or destroys the tongue, eye, lip, nose or any other limb, organ or member of another shall, upon conviction, be guilty of a separate felony for each such death, mutilation, disfigurement or other injury and shall be committed to the custody of the State Department of Corrections for a period of time of not less than five (5) years and not to exceed twenty-five (25) years for each such death, mutilation, disfigurement or other injury....
Miss.Code Ann. § 63-11-30(5). James Cowart was charged with an offense commonly referred to as DUI manslaughter, under section 63-11-30(5), for causing the death of another driver in a car accident.[7] Cowart, 910 So.2d at 727(¶ 1). James Smith was charged with aggravated DUI, also under section 63-11-30(5) for causing serious injury to another driver in an accident.[8] Smith, 942 So.2d at 310(¶ 1). Section 63-11-30(5) requires not only a violation of any subsection of Mississippi Code Annotated section 63-11-30(1)[9] but also, *1072 proof that the defendant acted negligently and that his negligence was the cause of the death or serious injury to the victim. Because negligence and causation must be proven, in addition to the violation of one of the subsections of section 63-11-30(1), in order to convict a defendant under section 63-11-30(5), evidence of impairment, and therefore consumption, would be relevant and admissible in those cases. The facts in Evans’s case are not at all similar to the facts of Smith and Cow art. Evans’s case is a straight DUI per se case, and evidence of consumption was inadmissible. Evans was not charged with driving while under the influence of an intoxicating liquor pursuant to section 63 — 11—30(l)(a) or charged with driving under the influence of another substance under section 63-11-30(l)(b). She was charged only with DUI per se under section 63 — 11—30(l)(c). The Smith and Cowart cases are section 63-11-30(5) cases, not DUI per se cases; and their holdings are inapplicable here.
¶ 29. A review of the records in Cowart and Smith show further factual distinctions between those cases and Evans’s case. The majority states that the indictment in Cowart does not specify which subsection of section 63-11-30(1) was charged, but that the language clearly indicates that the defendant was accused of driving with a BAC greater than .10%. I agree that the indictment is perhaps lacking with respect to subsection numbers and letters. However, the language of the indictment reflects that the elements of both subsections 63-ll-30(l)(a) and (l)(c) were charged in stating that Cowart did “willfully, unlawfully, and feloniously operate a motor vehicle while under the influence of intoxicating liquor, having ten one-hundredths percent (.10%) or more by weight volume of alcohol in his blood.”
¶ 30. The jury instructions submitted by both the defense and the State, which were given by the court in Cowart, both carried forth that same language from the indictment setting forth elements of subsections (l)(a) and (l)(c). The portion of the indictment charging a violation of operating a motor vehicle while under the influence of intoxicating liquor constitutes a violation of subsection (l)(a), thereby allowing evidence of impairment and consumption into evidence. Moreover, such evidence of intoxication and consumption was indeed presented to the jury. The jury heard evidence of beer cans in Co-wart’s truck at the scene of the wreck, with some of the beers still cold at the time of the wreck. Officers found beer cans inside and outside the truck, including a beer on the front seat and a bag of beer cans on the floorboard. Cowart left the scene of the accident. He claimed at trial that he drank three or four beers after leaving the scene, despite statements to law enforcement at the scene that he bought the beer before the wreck in two different towns and had been to a bar before the wreck. Cowart’s BAC registered a .16% on the Intoxilyzer. An officer testified that Cowart told him that he and his boss purchased a twelve-pack of beer after work and drove back to Forest where his vehicle was parked to drink the twelve-pack of beer. The officer stated that Cowart told him that he purchased another six-pack of beer, stopped at a fast-food restaurant to get something to eat, and then traveled home on Highway 21 where the wreck occurred. The officer also testified that the odor of alcohol permeated out of the vehicle, off both Co- *1073 wart’s breath and body. Furthermore, the officer testified that Cowart spontaneously approached him upon his return to the scene of the wreck and said he was drunk. The officer further testified that, coupled with his admission that he had been drinking, Cowart’s mannerisms were unsteady, his speech was slurred, and his eyes were red. The officer testified that, in his opinion, Cowart was intoxicated prior to leaving the scene of the wreck.
¶ 31. Testimony by the toxicologist was offered to refute Cowart’s claim that the three or four beers he had consumed following the wreck caused his BAC to register .13% on the Intoxilyzer. The gap in time between the wreck and Cowart’s claim of consumption of three to four beers after the wreck render the Cowart case factually distinguishable from the case at bar.
¶ 32. Likewise, the indictment in Smith does not specify the subsection of section 63-11-30(1) the defendant was charged with violating by delineating a subsection letter. However, the language in the indictment reflects that both subsections (l)(a) and (l)(c) were charged in the indictment with language stating that Smith did “willfully, unlawfully, feloniously drive or operate a vehicle in the County of Pearl River, State of Mississippi, at a time when he was under the influence of intoxicating liquor and at a time in which he had ten one-hundredths percent (.10%) or more in his blood ... to wit: .13%.” The indictment in Smith contains the word “and” between the language charging violations of subsections (l)(a) and (l)(c), making it clear that both subsections were contained in the indictment. At trial, evidence of intoxication was presented through testimony that Smith had the odor of alcohol on his breath, slurred speech, and bloodshot eyes. A witness also said Smith was drunk and loud, acted crazy, and cursed at the police. However, at the close of the case, the jury instructions reflect that only the per se violation was submitted to the jury-
¶ 33. There is no explanation in the record as to why both violations were not submitted to the jury. However, the prosecution may have set forth both violations in the indictment as alternative theories in the event the BAC results were suppressed or otherwise not admitted into evidence. The record does reflect that there was a pretrial motion to exclude the BAC results or suppress the testimony asserting that the defendant’s blood alcohol content would have been higher at the time of the wreck. However, we do not know why only one theory was submitted to the jury. Nonetheless, since both subsections were charged by the plain language of the indictment and evidence relevant to the elements charged therein was admissible, I find Smith factually distinguishable from the case at bar.
¶ 34. Furthermore, while the State’s objections to the defense expert’s qualifications on the subject of retrograde extrapolation and the human absorption rate of alcohol were, perhaps, inartful and lacking, I would find that the issue of admissibility of the testimony has been preserved for this Court’s review.[10] The admission or exclusion of expert testimony is within the *1074 discretion of the trial judge. Smith, 942 So.2d at 315(¶ 18). We do not reverse the decision of the trial judge unless his decision “was arbitrary and clearly erroneous, amounting to an abuse of discretion.” Id. at 316(1118). I see no abuse of discretion in the trial judge’s exclusion of Mr. Rosen-han’s testimony.
¶35. Mississippi courts apply a modified Dcmbert standard when ruling on the admission or exclusion of expert testimony. Id. at 316(¶ 20). The Mississippi Supreme Court has explained the standard as follows:
Under Rule 702, expert testimony should be admitted only if it withstands a two-pronged inquiry. Kansas City S. Ry. v. Johnson, 798 So.2d 374, 382 (Miss.2001). First, the witness must be qualified by virtue of his or her knowledge, skill experience or education. Second, the witness’s scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue.
Id. (citing Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 35(¶ 7) (Miss.2003)). Mr. Rosenhan was an unqualified witness under the first prong of the modified Dau-bert standard. The record reflects that Mr. Rosenhan retired from engineering and was teaching statistics and internal combustion engines at the college level. He indicated that he had studied and utilized the various relationships between ethanol ingestion, absorption, elimination, and blood alcohol content in humans. However, he had received no formal medical training. Mr. Rosenhan received formal training in mechanical engineering, not in the biological sciences or toxicology. The trial judge has a duty as gatekeeper to make sure that only reliable scientific information is presented to the court. Mr. Rosenhan was not qualified to testify regarding toxicology, including the absorption and metabolism of alcohol in the human body.
¶ 36. Moreover, in both Coivart and Smith, the two cases relied upon by the majority as allowing retrograde-extrapolation testimony in DUI per se cases, the judges in those cases allowed toxicologists to testify regarding human absorption rates and metabolism of alcohol. Mr. Ro-senhan was not qualified as an expert in toxicology. Moreover, as explained above, neither Cowart nor Smith was a DUI per se case under section 63 — 11—30(l)(c).
¶ 37. I find Evans’s attempt to enter evidence of her consumption of alcohol in order to show that her BAC was lower than .08% in the hour before being given the Intoxilyzer test is actually an effort to circumvent our holding in Porter. The decision whether to admit or refuse evidence is within the discretion of the trial judge. I find no abuse of discretion or error of law in the trial judge’s application of Porter to this case or in the judge’s exclusion of Mr. Rosenhan’s testimony. I respectfully dissent and would affirm the conviction and sentence.
MYERS, P.J., and GRIFFIS, J., Join this Opinion.

. The use of the term DUI per se in this opinion refers to a violation of section 63 — 11 — 30(l)(c), which under the applicable version of that statute is driving with a blood alcohol content over die legal limit of .08%. See Miss. Code Ann. § 63 — 11—30(1 )(c) (Supp.2008).

. The underlying violation of section 63 — 11— 30(1) in Cowart’s case charged a violation of driving under the influence of alcohol under subsection (l)(a) and under section (l)(c), the per se portion of the statute. Cowart, 910 So.2d at 727(¶ 1).

. The underlying violation of section 63 — 11— 30(1) in Smith’s case charged a violation of subsections (l)(a) and (l)(c), driving under the influence of alcohol. Smith, 942 So.2d at 310(¶ 1). However, only the per se violation was submitted to the jury.

.Section 63-1 l-30(l)(a)-(e) includes: (a) driving while under the influence of intoxicating liquor; (b) driving while under the influence of any other substance which impairs one's ability to operate a motor vehicle; (c) driving with a blood alcohol content of .08% or higher for those above the legal age to buy alcoholic beverages, or .02% for those below *1072 the legal age to buy alcoholic beverages; (d) driving while under the influence of a controlled substance, the possession of which is unlawful; or (e) driving with a blood alcohol content of .04% for persons operating a commercial motor vehicle.

. The State made a motion in limine to exclude any evidence from the defense’s proposed expert. The State noted in its argument that it learned of the proposed expert at docket call and implied that he had not been provided prior notice of the proposed expert's testimony through discovery. The State then moved orally to exclude the testimony of the expert as irrelevant and inadmissible under Porter. He argued that any such testimony would be based upon inadmissible facts. He further objected to any expert or lay witness who would testify as to Evans’s consumption of alcohol. See M.R.E. 701.