¶ 1. This conviction stems from a horrific wreck in which the defendant, David Lawrence, while driving intoxicated ran a stop sign and collided with another automobile resulting in the injury of the driver and the death of five children who were her passengers. Lawrence was convicted of one count of negligent operation of a motor vehicle while under the influence of intoxicating liquors; aggravated assault for his injury of the driver, Lisa Miller, and five counts of manslaughter by culpable negligence for the deaths of three of Miller's children Kenneth Miller, Joslyn Miller, and Jorian Miller and the death of two of their friends Ashley Bradley and Alexis Bradley. Following sentencing and the denial of the usual motions, Lawrence appeals to this Court.
 ¶ 2. Lawrence raises the following issues as errors which we quote verbatim:
 1. Was it error to restrict production of discovery in this case to only those matters listed in UCCR [sic] 9.04? *Page 602 
 2. Whether the trial judge committed reversible error by not acting as a gate keeper to exclude the testimony of Ray Steed and Maury Phillips and requiring them instead to be tested by cross-examination in the presence of the jury?
 3. Whether the trial judge committed reversible error by not allowing and requiring a hearing outside the presence of the jury by allowing the admission of a blood test result not performed in accord with methods adopted by the Commissioner of Public Safety.
 4. Whether the trial judge committed reversible error by not having a hearing outside the presence of the jury to exclude the opinions of the state's accident reconstructionist which were based on erroneous factual bases [sic]and not a complete reconstruction explaining loss of energy of both vehicles from inception of collision to their final resting point[.]
 5. Whether Aggravated DUI is a lesser included offense to Culpable Negligence Manslaughter and Reckless Indifference Aggravated Assault[.]
 6. Whether it is reversible error to fail to instruct the jury that Aggravated DUI is a lesser included offense to Culpable Negligence Manslaughter and Aggravated Assault.
Finding no error, this Court affirms the convictions and sentences.
 FACTS ¶ 3. On August 24, 2002, Lawrence drove a friend's Nissan Altima to the Ratliff Ferry Landing in Rankin County where he met other friends. Lawrence and his friends went boating. They brought along some beer, which was consumed while boating.
 ¶ 4. At some point during the afternoon, Lawrence's friends thought that he had consumed enough beer and should refrain from further drinking. Lawrence was angered by this suggestion. When the group returned to the landing, Joel Gordon, who had not consumed any alcoholic beverages, offered to drive Lawrence home. Lawrence refused the offer. Lawrence then got car keys, got into the car and left the parking lot at a high rate of speed. As Lawrence did so, several of his friends, among them, Lee Chandler, Joel Chandler, and Michael Peusch, were in the parking lot and witnessed these events.
 ¶ 5. After Lawrence left the landing, Joel Chandler contacted Officer Cline Wyman of the Madison County Sheriff's Department, who was also a friend of Lawrence. Chandler testified, "David was mad when he left. And Cline lives out that way. You know, if he saw him maybe he could help calm him down."
 ¶ 6. Shortly after Lawrence left, a collision, at the intersection of Ratliff Ferry Road and the Natchez Trace, was reported at approximately 7:00 p.m. The collision was between the vehicle driven by Lawrence and a vehicle driven by Lisa Miller. Miller was proceeding northerly on the Natchez Trace and had the right of way. Lawrence, who was traveling west on Ratliff Ferry Road, was required to stop for the stop sign prior to entering the intersection of the Natchez Trace and Ratliff Ferry Road. It was later determined that Lawrence had failed to stop for the stop sign and collided with the vehicle driven by Miller. Miller had as passengers in her vehicle, five children.
 ¶ 7. Miller testified that she was driving at approximately fifty-five miles per hour as she approached the intersection. Upon noting that the driver of the other vehicle apparently was not intending to stop at the stop sign, Miller sped up in an effort to *Page 603 
avoid a collision. Unfortunately, Miller's efforts to avoid the collision were unsuccessful. The five children, who were passengers in Miller's vehicle, died from the injuries sustained in the collision, and Miller was seriously injured.
 ¶ 8. Lawrence, who was also injured, was transported to the University Medical Center (UMC) in Jackson. While at UMC, blood was drawn from Lawrence for analysis. That analysis revealed that Lawrence had a blood alcohol content of .21 percent well above the legal limit. As a result these charges were brought against Lawrence.
 ¶ 9. At the trial, both the State and the defense called accident reconstructionists to testify. Ray Steed, the accident reconstructionist presented by the State, testified that according to his calculations, Miller was traveling approximately fifty-one miles per hour at the point of impact and Lawrence was traveling approximately eighty-one miles per hour at the point of impact. Sam Green, Lawrence's accident reconstructionist, testified that according to his calculations, Miller's speed was approximately fifty-nine miles per hour at the point of impact and that Lawrence's speed was approximately forty-seven miles per hour at the point of impact, and below the speed limit. Lawrence testified that he did not intentionally run the stop sign at the intersection of Ratliff Ferry Road and the Trace. He acknowledged having consumed "a couple of beers" prior to the collision, and stated that he did not recall much of what transpired prior to the collision.
 ¶ 10. Lawrence was found guilty of negligent operation of a motor vehicle, aggravated assault, and five counts of culpable negligence manslaughter.
 ¶ 11. Since Lawrence's issues are intertwined, they will be recast into three errors.
 I. Was it error to restrict production of discovery in this caseto only those matters listed in UCCCR 9.04(A)?
 ¶ 12. Lawrence contends that the trial court erred by restricting discovery to only those matters in URCCC 9.04(A).[1] Lawrence argues that under Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Hentz v.State, 489 So.2d 1386 (Miss. 1986), and M.R.E. 705, the State should have produced in discovery *Page 604 
all of the facts and data relied upon by its expert witnesses in formulating their opinions. Lawrence claims that the State (1) failed to produce the data used by the accident reconstructionist, (2) failed to produce the methods by which the data was analyzed, and (3) failed to produce evidence of how the "gas chromatograph" was calibrated.
 ¶ 13. Brady requires that the State make available to the defendant any exculpatory evidence. Brady, 373 U.S. at 88,83 S.Ct. 1194. In Hentz our supreme court indicated that the State should not decide what evidence may or may not be exculpatory, but should instead make the evidence available to the defense for that determination. Hentz, 489 So.2d at 1388. Under M.R.E. 705, the court may require that the foundation for an expert's opinion be disclosed prior to trial, or it may allow disclosure of the facts and data underlying an opinion on cross-examination.
 ¶ 14. Lawrence filed a motion for discovery on November 20, 2002. The State filed its discovery response and discoverable materials on January 22, 2003. Supplemental discovery was provided by the State pursuant to Rule 9.04. As part of the discovery, an accident reconstruction disc was provided to the defense (June 4, 2003).
 ¶ 15. On June 9, 2003, defense counsel filed a motion for discovery and to compel discovery requesting copies of "all facts or data relied upon by any state's expert witness used by the expert in forming an opinion." On June 9, 2003, the trial judge signed an order to compel discovery. That order required that the prosecution disclose the following:
 1. All facts or data relied upon by any state's expert witness used by the expert in forming an opinion.
 2. A full description of the educational and experiential background of any expert witness, describing all knowledge, skill, experience, training, or education bearing on the opinion he intends to offer.
 3. The substance of any opinion to be offered by any state's witness.
 4. The Director of the Mississippi Crime Laboratory is ordered to immediately perform a full drug screen or toxicology test on the blood drawn from Lisa Miller and submitted to the Crime Laboratory concerning the collision between her car and the Defendant's car. This test is ordered to be performed instanter and the results provided to the District Attorney and Defense Counsel immediately upon completion. This case is set for trial on June 23, 2003, and it is imperative to perform this test and provide the results in order for the trial to proceed. A copy of this order shall be delivered to the Director of the Crime Lab by telecopier and also by in-hand delivery.
 5. The District Attorney is ordered to make Officer Gary Davis, Ridgeland Police Department, available for an interview by Defense counsel, to be conducted in the office of Jimmy Dixon, who is the investigator for the Madison County District Attorney's office.
However, the trial judge later declined to enforce that order. He stated that the court felt "hoodwinked in the execution of that order. . . . Had I read that order, I would not have signed that order because it does not comply with Rule 9.04. The Court accepted that motion of discovery as one to obtain discovery as stated under Rule 9.04. It went further than that."
 ¶ 16. "In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the *Page 605 
standard of review is abuse of discretion." Montgomery v.State, 891 So.2d 179 (¶ 6) (Miss. 2004). The supreme court has enumerated the following procedures when a discovery violation is asserted before the trial court:
 1. Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
 2. If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
 3. If the defendant does request a continuance, the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
 Norris v. State, 735 So.2d 363, 364 (Miss. 1999) (citing Cole v. State, 525 So.2d 365, 367-68 (Miss. 1987)). When the State fails to follow discovery procedures a reversal is not warranted in every case. Box v. State, 437 So.2d at 21. This Court has held that a "[n]on-discovered evidence may be admitted at trial if the party against whom that evidence is offered is given a reasonable opportunity to make adequate accommodation." Robinson v. State, 508 So.2d 1067, 1071 (Miss. 1987).
Randolph v. State, 852 So.2d 547, 564 (¶ 52) (Miss. 2002).
 ¶ 17. We find no abuse of discretion by the trial judge. M.R.E. 705 gives to the trial court the option of requiring that the foundational data upon which an expert's opinion is based be provided to the opposing party prior to trial or revealed at trial through cross-examination. The defense was provided the reports from the various expert witnesses of the State. The defense objected to the testimony of Dr. Hayne, the pathologist, because the foundational facts for his opinion were not specifically set out in the discovery response. The trial court found that there was no timely objection to the testimony of Dr. Hayne. However, it did allow the defense the opportunity to conduct voir dire of Dr. Hayne as to the foundation for his opinion and allowed a short recess before going forward. After doing so the defense proceeded without further objection.
 ¶ 18. The defense objected to the testimony of Maury Phillips, a forensic toxicologist, relating to blood alcohol, saying that there was no proper evidence of his certification to conduct these tests, or that the machine was properly calibrated to run these tests. The court allowed the evidence, after Phillips presented his certificate, testified as to his qualifications, and how he calibrated the machine which conducted the analysis.
 ¶ 19. After voir dire of Ray Steed, the State's accident reconstructionist, as to his qualifications, the trial court accepted him as an expert. The court then informed the defense, that it could cross-examine him as to how he arrived at his conclusions and the methods used in making his determinations.
 ¶ 20. After reviewing the trial court's actions regarding discovery, this Court finds no merit in this issue.
 II. Admissibility of Evidence ¶ 21. Lawrence argues that the trial court erred by (1) failing to act as "gatekeeper" and exclude the testimony of *Page 606 
Steed, the state's accident reconstructionist, and Phillips, a forensic toxicologist; (2) allowing the admission of a blood test result not performed within methods adopted by the commissioner of public safety, and (3) failing to have a hearing outside the presence of the jury to exclude the opinions of the State's accident reconstructionist.
 ¶ 22. Admissibility and relevancy of evidence are within the discretion of the trial court and, "absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal." McCoy v. State, 820 So.2d 25 (¶ 15) (Miss.Ct.App. 2002). The trial court found that Steed and Phillips were qualified by either education, training or experience to render their respective opinions. Their areas of expertise have been accepted by the courts of this state for many years as recognized areas of expertise. In Roberts v. Grafe Auto Co.,701 So.2d 1093, 1099 (Miss. 1997), the supreme court held that "[i]t is well-entrenched in Mississippi law that a qualified expert's opinion testimony regarding accident reconstruction may be admissible." Regarding chemical tests, the supreme court has stated that "[e]xtraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol." Cutchens v. State,310 So.2d 273, 278 (Miss. 1975). That recognition was not eliminated by the adoption of M.R.E. 702.
 ¶ 23. Lawrence also claims that the testimony of Steed and Phillips should have been excluded because the defense was not allowed to voir dire these witnesses about the principles and methods used in arriving at their opinions. The defense extensively cross-examined the witnesses at issue regarding the methods used to arrive at their opinions on speed determination and the qualifications to calibrate the machine used to determine the blood alcohol level of Lawrence. This Court cannot say that the trial court erred in its handling of these matters.
 ¶ 24. Next, Lawrence claims that the trial court should not have allowed the admission of the blood test results because the result was not achieved within the methods adopted by the commissioner of public safety. Lawrence maintains that the State failed to produce documentation during discovery which showed that Phillips was certified to operate the gas chromatograph machine used to determine Lawrence's blood alcohol level. InBearden v. State, 662 So.2d 620, 624 (Miss. 1995) our supreme court held that a blood alcohol test was admissible as long as there was substantial compliance with Mississippi Code Annotated § 63-11-19.
 ¶ 25. Phillips provided testimony on how the gas chromatograph operates and how it was calibrated before and after each test. Phillips also established that the machine was run in accordance with crime lab procedures.
 ¶ 26. Finally, Lawrence claims that a hearing should have been held outside the jury's presence to exclude those opinions of Steed which were not factual. Lawrence alleges that Steed's testimony explaining the loss of energy of both vehicles from the inception of the collision to the vehicles' final resting place was not a complete reconstruction. Lawrence claims that Steed miscalculated the speed of Lawrence's vehicle. Sam Green, Lawrence's accident reconstruction witness, testified that Lawrence was traveling below fifty miles per hour and Steed indicated that Lawrence's speed was approximately eighty-one miles per hour at impact. These would appear to be matters which go more to the weight to be given the testimony. *Page 607 
 ¶ 27. When experts reach different conclusions, the trial court is not required to exclude their testimony as long as it is relevant and is provided through some type of scientific basis.Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
 ¶ 28. These issues are without merit.
 III. Whether aggravated DUI is lesser included offense of culpablenegligence manslaughter.
 ¶ 29. Lawrence argues that aggravated DUI set out in Mississippi Code Annotated Section 63-11-30 (2004) is a lesser-included offense of manslaughter by culpable negligence and that an instruction should have been given stating such. As support for his position, Lawrence cites Mayfield v. State,612 So.2d 1120, 1124 (Miss. 1992), where the supreme court noted the following:
 This Court has often held that a criminal defendant may be convicted of a crime not expressly charged if the crime is logically and necessarily included in whatever crime the indictment sets out. Mayfield argues that the crime of aggravated D.U.I. which § 63-11-30(4) describes is not "included" in the crime of manslaughter by culpable negligence since conviction of aggravated D.U.I. requires the State to prove intoxication — an element not included in the offense of manslaughter.
 In Craig v. State, 520 So.2d 487, 493 (Miss. 1988), the Court expressly found that the crime of aggravated D.U.I. set out in § 63-11-30(4) is "a lesser included offense necessarily encompassed . . . under the more serious charge of manslaughter by culpable negligence." The Court has repeatedly reaffirmed that position.
(citations omitted).
 ¶ 30. The supreme court went on to state:
 The Grayer [v. State, 519 So.2d 438 (Miss. 1988)] rationale is instructive in the instant case. When comparing the elements of aggravated D.U.I. to the elements of manslaughter by culpable negligence, we find that the unmatched element, driving while intoxicated, is "not inconsistent" with the greater offense. In fact, the act of operating a motor vehicle while under the influence of intoxicating liquor is a factor a jury is permitted to consider in determining whether a defendant is guilty of culpable negligence.
Mayfield, 612 So.2d at 1126.
 ¶ 31. Lawrence also requested an instruction on aggravated DUI as a lesser-included offense, which was denied by the trial court. The trial court found that in Wilkerson v. State,731 So.2d 1173, 1179-80 (¶ 23) (Miss. 1999), the supreme court held:
 The charge of DUI homicide was the only charge brought against Wilkerson. Therefore, the term "lesser included offense" is incorrectly used in this brief. While when it was first enacted "DUI homicide" carried a smaller potential penalty than manslaughter and could under certain circumstances have been considered a lesser-included offense to manslaughter there is nothing which compels it to retain that status. It is now and has always been a free standing criminal offense. The fact that it now carries a criminal sanction greater than that for manslaughter creates no constitutional infirmity. Thus, appellant's assignment of error has no merit. *Page 608 
 ¶ 32. Given the holding in Wilkerson, this Court declines to find error in this issue.
 ¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OFCONVICTION IN COUNT I OF DEATH BY NEGLIGENT OPERATION OF A MOTORVEHICLE WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUORS ANDSENTENCE OF TWENTY-FIVE YEARS; IN COUNT II OF AGGRAVATED ASSAULTAND SENTENCE OF TWENTY YEARS; IN COUNTS III, IV, V, AND VI OFMANSLAUGHTER BY CULPABLE NEGLIGENCE AND SENTENCE OF TWENTY YEARSON EACH COUNT ALL IN THE CUSTODY OF THE DEPARTMENT OF CORRECTIONSIS AFFIRMED. THE SENTENCES IMPOSED IN COUNTS III AND IV SHALL BESERVED CONCURRENTLY; THE SENTENCES IMPOSED IN COUNTS V AND VISHALL BE SERVED CONCURRENTLY BUT CONSECUTIVELY TO THE SENTENCESIMPOSED IN COUNTS III AND IV. THE SENTENCE IMPOSED IN COUNT ISHALL BE SERVED CONSECUTIVELY TO THE SENTENCES IMPOSED IN COUNTSIII, IV, V, AND VI. THE SENTENCE IMPOSED IN COUNT II SHALL BESERVED CONSECUTIVELY TO THE SENTENCES IMPOSED IN COUNTS I, III,IV, V AND VI. THE SENTENCE IN COUNT II IS SUSPENDED AND THEDEFENDANT SHALL SERVE A TERM OF FIVE YEARS SUPERVISED PROBATIONWITH THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TERMS SET OUTBY THE TRIAL COURT AS STATED IN ITS JULY 3, 2003 ORDER. ALLSENTENCES ARE AFFIRMED. FURTHER THE ORDER FOR THE DEFENDANT TOPAY COURT COSTS AND FEES IN THE AMOUNT OF $2,275 IS AFFIRMED. ALLCOSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
[1] URCCC 9.04(A) provides: A. Subject to the exceptions of subsection "B", below, the prosecution must disclose to each defendant or to defendant's attorney, and permit the defendant or defendant's attorney to inspect, copy, test, and photograph upon written request and without the necessity of court order the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:
1. Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness and the substance of any oral statement made by any such witness;
2. Copy of any written or recorded statement of the defendant and the substance of any oral statement made by the defendant;
3. Copy of the criminal record of the defendant, if proposed to be used to impeach;
4. Any reports, statements, or opinions of experts, written, recorded or otherwise preserved, made in connection with the particular case and the substance of any oral statement made by any such expert;
5. Any physical evidence and photographs relevant to the case or which may be offered in evidence; and
6. Any exculpatory material concerning the defendant.
Upon a showing of materiality to the preparation of the defense, the court may require such other discovery to the defense attorney as justice may require.