790 So.2d 856 (2001)
Kenyon F. WASH, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00738-COA.
Court of Appeals of Mississippi.
February 20, 2001.
Rehearing Denied April 17, 2001.
Certiorari Denied July 26, 2001.
*857 V.W. Carmody Jr., Jackson, Kevin Dale Camp, Attorneys for Appellant.
Office of the Attorney General by Dewitt T. Allred III, Jackson, Attorney for Appellee.
Before SOUTHWICK, P.J., MYERS, and CHANDLER, JJ.
MYERS, J., for the Court:
¶ 1. Kenyon Wash was convicted of negligent homicide while driving under the influence of alcohol in violation of Miss. Code Ann. § 63-11-30(5) (Rev.2000). He was sentenced by the Circuit Court of Neshoba County to twenty years in the custody of the Mississippi Department of Corrections, with four years suspended and five years probation. Aggrieved, he now appeals his conviction, raising issues concerning evidence introduced at trial, *858 the denial of several motions made by Wash, and the award of restitution to the wife of the victim. Finding no error, we affirm.

I. DID THE TRIAL COURT ERR IN ALLOWING THE INTRODUCTION OF BLOOD TEST EVIDENCE?

FACTS
¶ 2. On August 8, 1998, a collision occurred between the appellant and Conrad and Jeannie Fitzhugh. The evidence presented at trial established that at the time of the collision, Wash was driving on the wrong side of the road. Conrad Fitzhugh died some twenty hours later as result of injuries sustained in the accident.
¶ 3. An eyewitness of the accident saw Wash throw a paper sack into some bushes. When police arrived on the scene, the eyewitness directed them to where Wash had thrown the sack. There police found a paper sack containing a can of beer. Two police officers present at the scene testified that they smelled alcohol on Wash's breath and that Wash was staggering as he walked and slurred his speech. Wash refused to take a "breathalyser" test, but told the officers that he would be willing to do anything else "to meet their satisfaction."
¶ 4. Wash was taken to the county hospital, where a blood test was administered. The evidence showed that this test was administered two and one-half to three hours after the accident. The results of the blood test showed Wash to have a 0.13% alcohol level.

STANDARD OF REVIEW
¶ 5. With regard to the issues concerning the admission of evidence, our standard of review regarding the trial court's admission of evidence is well-settled:
Under the Supreme Court's standard of review, the admissibility of evidence rests within the discretion of the trial court.... Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.
Sturdivant v. State, 745 So.2d 240, 243 (Miss.1999) (citations omitted).
¶ 6. "We usually defer to the trial court's determination of whether authorities have maintained the chain of custody of evidence." Nix v. State, 276 So.2d 652, 653 (Miss.1973). Also, "[w]hen reviewing the chain of custody, we will not disturb the finding of the trial court unless there has been an abuse of discretion." Nalls v. State, 651 So.2d 1074, 1077 (Miss.1995) (citing Morris v. State, 436 So.2d 1381 (Miss.1983)).

ANALYSIS
¶ 7. Wash relies chiefly on Miss.Code Ann. § 63-11-8 (Rev.2000) for his assertion that evidence regarding his blood test should not have been admitted at trial. This statute mandates that a test for determining blood alcohol content be performed on the operator of any motor vehicle involved in an accident resulting in death. Miss.Code Ann. § 63-11-8(1) (Rev. 2000). The statute further provides that such test shall be administered within two hours of the accident "when possible." Id. First, Wash argues that the statutory requirement of a resulting death was not met because Fitzhugh had not died when the test was performed. Second, he argues that the statutory time requirement was not satisfied because his test was administered more than two hours after the accident.
*859 ¶ 8. The Mississippi Supreme Court has recently held that § 63-11-8 is unconstitutional because it authorizes search and seizure without probable cause. McDuff v. State, 763 So.2d 850, 853 (Miss.2000). Therefore, it is not necessary to analyze the aforementioned issues. Rather, we must determine whether the administration of the blood test was valid notwithstanding the invalidity of the statute. From the outset, we find that Wash consented to the drawing of his blood. In his own testimony, Wash stated that he indicated to the officers that he was unwilling to take a breathalyser test, but would take any other test. He even spoke with an attorney prior to allowing his blood to be drawn. Wash argues that if he were intoxicated, he could not have given a valid consent to the test. However, the Mississippi Supreme Court has held that where the defendant appears to be aware of the circumstances surrounding his consent, the consent is valid despite his purported intoxication. Mitchell v. State, 609 So.2d 416, 421 (Miss.1992). Wash had the presence of mind to refuse a breathalyser test and to request to speak with an attorney before consenting to the drawing of his blood. He was certainly competent to give valid consent. Therefore, the drawing of Wash's blood for the purpose of testing its blood-alcohol content did not violate his constitutional protection against unwarranted search and seizure. Probable cause existed, and Wash consented to the test.
¶ 9. Furthermore, the officers handling the accident had probable cause to issue the blood test. As noted above, the officers on the scene were directed by an eyewitness to a paper bag which Wash had thrown in the bushes following the accident. This bag contained a can of beer. Two officers testified that Wash staggered as he walked, that his breath smelled of alcohol, and that his eyes were very red. In addition, the circumstances of the accident indicated negligent driving on the part of Wash. These circumstances are adequate to establish probable cause for a blood alcohol test. McDuff, 763 So.2d at 855.
¶ 10. As for the issue of the time lapse between the accident and the administration of the test, we find little guidance in this area. Mississippi's implied consent law provides that "[n]o such tests shall be given by any officer or any agency to any person within fifteen (15) minutes of consumption of any substance by mouth." Miss Code Ann. § 63-11-5(1) (Rev.2000). Nothing is mentioned about a time before which the test must be given. Although Miss.Code Ann. § 63-11-8 has been declared unconstitutional insofar as it lacks a probable cause requirement, we now look to it for direction in this narrow context. The statute provides that the test is to be administered within two hours of the accident "when possible." Miss.Code Ann. § 63-11-8 (Rev.2000). The words "when possible" are relevant here. Were this two hour time frame necessary to ensure the integrity of the test results, it is doubtful that the legislature would have included such language in the statute. The trial judge found that although the blood test was administered more than two hours after the accident, there was no evidence of deliberate delay on the part of the officers. We agree, and we see no reason to find that the time lapse between the accident and the administration of the blood test was prejudicial to Wash in any way.
¶ 11. Wash argues that even if the blood were legally taken, the results of the test should be inadmissible because some persons in the chain of custody were not called at trial. "The test to determine whether there has been a break in the chain of custody is whether there is evidence *860 of probable tampering." Nix v. State, 276 So.2d 652, 653 (Miss.1973). Wash does not assert that any tampering took place, nor is there any evidence of tampering. This argument is therefore without merit.

II. DID THE TRIAL COURT ERR IN ALLOWING THE TESTIMONY OF TWO OFFICERS?

FACTS
¶ 12. Two officers involved in Wash's arrest testified at trial. Trooper Derrick Glenn, who was the first officer to arrive at the scene, testified first regarding his observations on the evening of the accident. Trooper Ricky Breland was the second officer to arrive on the scene of the accident. During Wash's cross-examination of Breland, it was mentioned that Breland had spoken with Glenn in the time between their testimonies, and that the conversation touched on the case about which they were testifying. Because the rule of sequestration had been invoked, Wash moved for a mistrial. The trial judge called for a hearing outside of the presence of the jury to determine if any violations had taken place.
¶ 13. Both officers were called to testify as to their conversation, and both testified that they had not discussed the substance of their testimony. Rather, they said, they discussed being nervous on the witness stand and other trivial matters. After having heard their testimonies, the trial judge ruled that no violation had taken place. Wash never objected to the admission of either Glenn or Breland's testimony. It was only during Breland's testimony that the disputed conversation between the officers was brought up. No objection to the admission of the officers' testimonies was made prior to their taking the stand. There was thus no opportunity for the trial judge to err in allowing the testimony of the officers. However, we will discuss his denial of Wash's motion for mistrial based upon the alleged sequestration rule violation.

STANDARD OF REVIEW
¶ 14. "New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State." McClain v. State, 625 So.2d 774, 781 (Miss.1993).

ANALYSIS
¶ 15. In denying Wash's motion for a new trial based upon the discussion between Troopers Glenn and Breland, the trial court found that no violation of the sequestration rule had taken place. Rather, the court found, the officers had merely "talked shop" and that Trooper Breland's testimony had not been influenced by his speaking with Trooper Glenn. The court's findings on these matters do not amount to an abuse of discretion.
¶ 16. Wash implies that because the officers were roommates, "it would stand to reason that they would try to assist each other in obtaining a conviction of Wash." This is mere speculation, and we are bound to accept as true all evidence favorable to the State. We hold that this issue is without merit.

III. DID THE TRIAL COURT ERR IN DENYING WASH'S MOTIONS FOR MISTRIAL, DIRECTED VERDICT, AND JNOV?

FACTS
¶ 17. The prosecution called J.M. Cain to testify at trial. It was brought out in testimony that Cain was an accident reconstructionist. Wash moved for a mistrial, *861 asserting that the jury would be unfairly influenced by Cain's testimony because it was stated that he was an accident reconstructionist and no reconstruction had been performed in the subject accident. In denying this motion, the trial court found that it was clear from the testimony that no reconstruction was performed and that the jury was not be unduly influenced by such testimony.
¶ 18. Wash now argues that the trial court's denial of this motion for mistrial constituted reversible error. Wash also argues that the trial court erred in denying his motions for a directed verdict at the close of the State's case and at the close of the entire case and his motion for judgment notwithstanding the verdict or, in the alternative, a new trial.

STANDARD OF REVIEW
¶ 19. The standard of review for a denial of a judgment notwithstanding the verdict and a directed verdict are identical. Wilkerson v. State, 731 So.2d 1173, 1182 (Miss.1999). The Mississippi Supreme Court has stated that in reviewing the trial court's denial of JNOV:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.... We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
McClain, 625 So.2d at 778 (citations omitted).

ANALYSIS
¶ 20. In asserting that the jury was unduly influenced by Cain's testimony, Wash makes no demonstration of undue influence, nor does he cite any supporting law. In reviewing all evidence in a light most favorable to the State, we find the evidence at trial demonstrated that an automobile accident occurred when Wash crossed into the opposite lane of traffic and collided with the Fitzhughs. Conrad Fitzhugh died as a result of the accident. A sample of Wash's blood was legally taken following the accident, and analysis of the sample revealed that the level of blood-alcohol content was above the legal limit. The trial court's denial of Wash's motions for directed verdict, new trial and judgment notwithstanding the verdict were all proper.

IV. DID THE TRIAL COURT ERR IN GRANTING RESTITUTION TO THE VICTIM'S WIFE?

FACTS
¶ 21. After the return of a guilty verdict by the jury, the court ordered a hearing to determine what, if any, restitution would be awarded to the wife of the deceased. The court issued a judgment granting Mrs. Fitzhugh $116,613.20. This amount represented all burial costs and hospital expenses, as well as one year's wages for the deceased and lost wages for Mrs. Fitzhugh. Wash now appeals this grant of restitution, asserting that the trial court did not take into account his financial inability to pay such an amount.
¶ 22. A review of the record reveals that Wash did not make objection to the award of restitution at the sentencing hearing. He is therefore procedurally barred from raising this issue on appeal. Powell v. State, 536 So.2d 13, 17 (Miss. 1988).
*862 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION OF NEGLIGENT HOMICIDE WHILE DRIVING UNDER THE INFLUENCE OF ALCOHOL AND SENTENCE OF TWENTY YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS SUSPENDED AND AWARD OF $116,613.20 IN RESTITUTION IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING and CHANDLER, JJ., concur.