942 So.2d 308 (2006)
James M. SMITH a/k/a James Michael Smith, Appellant/Cross Appellee,
v.
STATE of Mississippi, Appellee/Cross Appellant.
No. 2004-KA-01385-COA.
Court of Appeals of Mississippi.
November 14, 2006.
*310 R. Wayne Woodall, Gulfport, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before MYERS, P.J., BARNES and ISHEE, JJ.
MYERS, P.J., for the Court.
¶ 1. James M. Smith was convicted, in the Circuit Court of Pearl River County, Mississippi, of aggravated driving under the influence of alcohol. The jury found Smith guilty of violating Mississippi Code Annotated section 63-11-30(5) (Rev.2004) by permanently disabling Richard Edward Barry through the negligent operation of a motor vehicle while under the influence of alcohol. Smith was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with five years to be served in the intensive supervision program, under house arrest, pursuant to Mississippi Code Annotated section 47-5-1003 (Rev.2004), and the remaining fifteen years suspended pending successful completion of a five year period of post-release *311 supervision under Mississippi Code Annotated section 47-7-34 (Rev.2004). The trial court further ordered Smith to pay $95,000 in restitution to the Richard Edward Barry Special Needs Trust. Aggrieved by the trial court's ruling, Smith now appeals raising the following issues:
I. WHETHER THE FOUR HOUR DELAY BETWEEN THE COLLISION AND SEIZURE OF SMITH'S BLOOD PRECLUDED THE ADMISSIBILITY OF THE TEST RESULTS?
II. WHETHER THE TRIAL COURT ERRED UNDER MISSISSIPPI RULE OF EVIDENCE 702 IN ADMITTING OPINION TESTIMONY OF THE STATE'S FORENSIC TOXICOLOGIST, BASED ON THE MATHEMATICAL CALCULATION OF RETROGRADE EXTRAPOLATION, ESTIMATING THAT SMITH'S BLOOD ALCOHOL CONTENT WOULD HAVE BEEN HIGHER AT THE TIME OF THE ACCIDENT THAN IT WAS AT THE TIME THE BLOOD SAMPLE WAS TAKEN?
III. WHETHER THE OFFICER'S REFUSAL TO ALLOW SMITH TO TELEPHONE HIS COUNSEL PRIOR TO THE COMPLETION OF THE BOOKING PROCESS WAS A VIOLATION OF SMITH'S CONSTITUTIONAL RIGHT TO COUNSEL AND SHOULD RESULT IN THE EXCLUSION OF HIS BLOOD TEST RESULTS FROM EVIDENCE?
¶ 2. The State of Mississippi cross-appeals and requests that this Court re-sentence Smith raising the following issue:
IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO FOLLOW THE SENTENCING GUIDELINES SET OUT IN MISSISSIPPI CODE ANNOTATED SECTION 47-5-1003 BY PLACING SMITH IN THE INTENSIVE SUPERVISION PROGRAM?
¶ 3. Finding no error, we affirm the trial court's rulings on the issues raised in both the direct and cross-appeal.

STATEMENT OF THE FACTS
¶ 4. On December 1, 2001 Smith was driving his truck at a high rate of speed when he ran a stop sign at the corner of South Haugh Avenue and Memorial Boulevard in Picayune, Mississippi. As Smith proceeded through the intersection, his truck collided with a Mitsubishi Montero driven by Kimberly Bogan and then careened across Memorial Boulevard striking a Ford Bronco driven by Richard Barry. Barry's vehicle was propelled from the roadway and came to rest upside down in a ditch adjacent to Memorial Boulevard. As a result of the accident, Bogan suffered minor injuries, while Barry suffered catastrophic injuries, including permanent paralysis which has rendered him virtually bedridden.
¶ 5. Smith was indicted by a grand jury in the Pearl River County Circuit Court, under Mississippi Code section 63-11-30(5), aggravated driving under the influence of intoxicating liquor. Smith moved ore tenus to exclude from evidence the Mississippi Crime Laboratory report that established Smith's blood alcohol content (BAC) at thirteen one-hundredths percent (.13%) on the night of the accident, and to prevent the State's expert in forensic toxicology, Emily Jochimsen, from testifying that in her opinion, Smith's BAC would have been higher at the time of the accident than the .13% present some four hours later when the sample was taken. Both motions were denied, and the case went to trial on May 20, 2004.
¶ 6. At trial, Lieutenant David Bean of the Picayune Police Department testified that at 8:57 p.m., on December 1, 2001, he *312 was dispatched to the scene of an automobile accident at the intersection of South Haugh Avenue and Memorial Boulevard. Bean arrived within minutes of the accident, and witnesses informed him that Smith ran the stop sign. As Bean made his way over to check on Smith's well being, Bean observed Smith place a twelve-pack of Bud Light beer underneath his vehicle. Bean questioned Smith about the accident and whether he needed medical attention. Smith stated that he did not require medical attention and that he could not remember the accident. Bean testified that he could smell an intoxicating substance on Smith's breath, Smith's speech was slurred, and his eyes were bloodshot. Bean then asked Smith if he had been drinking. After refusing to answer, Smith was offered standard field sobriety tests. Smith cooperated with the horizontal gaze nystagmus test or "pen test," but refused to cooperate with the "one-leg stand" or "walk and turn" tests. Smith also refused the portable Intoxilyzer breath test. After establishing probable cause, Bean arrested Smith for DUI and read Smith his Miranda rights. Smith acknowledged that he understood his rights and did not request legal or medical assistance at that time. Bean then placed Smith in his patrol car while Bean concluded his investigation of the accident scene. Smith was transported to the police station at approximately 9:50 p.m.
¶ 7. Bean testified that once at the station, he again informed Smith of his Miranda rights and explained Mississippi's implied consent law. Bean offered Smith the Intoxilyzer 5000 breath test, once at approximately 9:58 p.m. and again approximately one-half hour later. Smith refused to submit to either test. The jailer then began recording Smith's personal information into the computer, taking fingerprints, and conducting other matters incident to the booking process. While Smith was being booked, Bean gave Smith the option of submitting to a blood test. Smith replied, "I'm not refusing, I need to talk to someone, an attorney or somebody." Bean informed Smith that he would be allowed to make a phone call once the booking process was complete. Smith then refused the blood test. As a result of Smith's refusal to submit to either a blood or breath test, Bean prepared and had issued a warrant for a sample of Smith's blood. Smith was then transported to a local hospital where, at 1:00 a.m. on December 2, 2001, a blood sample was drawn and sent to the state crime lab for testing. Smith was then returned to the police station where the booking process was completed.
¶ 8. Emily Jochimsen, the Mississippi Crime Lab forensic toxicologist who conducted the ethyl alcohol analysis of Smith's blood, testified that the test results indicated that Smith had a BAC of thirteen one-hundredths percent (.13%) at the time the blood sample was taken. The legally-permissible minimum level at the time was a BAC of ten one-hundredths percent (.10%). The record further indicates, and Smith concedes, that he did not consume any food or alcohol in the interim between the accident and the drawing of the blood sample. Jochimsen further testified that, based on the mathematical calculation of retrograde extrapolation (the process of predicting an earlier unknown value by calculating a known later value with a series of generally used average values, and projecting that result back in time), she was of the opinion that Smith's BAC would have been higher at the time of the accident than the .13% present at the time that the blood sample was taken.
¶ 9. At issue in Smith's appeal is: (1) the trial court's admission of the state crime lab test results; (2) the admission of Jochimsen's testimony regarding retrograde *313 extrapolation; and (3) Smith's claim that the officer's refusal to allow him to telephone counsel prior to completion of the booking process was a violation of his constitutional right to counsel. Smith asserts that the trial court's ruling on each of these matters was in error and asks this Court to find an abuse of discretion. Further, on cross-appeal, the State of Mississippi asserts that the trial court erred in sentencing Smith to the intensive supervision program, and argues that Smith should be classified as a violent offender. As a violent offender, Smith would be ineligible for the intensive supervision program under Mississippi Code Annotated section 47-5-1003.

LEGAL ANALYSIS
I. WHETHER THE FOUR HOUR DELAY BETWEEN THE COLLISION AND SEIZURE OF SMITH'S BLOOD PRECLUDED THE ADMISSIBILITY OF THE TEST RESULTS?
¶ 10. Smith argues that the four hour delay in obtaining a sample of his blood was unexplained and rendered the test results inadmissible under Mississippi Code Annotated section 63-11-8. He further contends that the State should have been required to establish his BAC at the time of the accident, not hours later. The crux of Smith's argument is that the measure of his BAC taken four hours after the accident did not in any way assist the jury in determining whether or not his BAC exceeded the legally permissible minimum level at the time of the accident. Therefore, Smith postulates that the trial judge should have ruled to exclude the blood test results from evidence at the suppression hearing. The State asserts that the delay was attributable solely to Smith, whose unwillingness to cooperate with law enforcement officials forced the State to obtain a warrant, transport Smith to the hospital, and extract his blood.
STANDARD OF REVIEW
¶ 11. Our standard of review for either the admission or exclusion of evidence is abuse of discretion. Harrison v. McMillan, 828 So.2d 756, 765(¶ 27) (Miss. 2002). Even if this Court finds an erroneous admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party. Gibson v. Wright, 870 So.2d 1250, 1258(¶ 28) (Miss.Ct.App.2004).
DISCUSSION
¶ 12. From the outset, this Court recognizes that the movant in a suppression hearing must support his allegations with proof, and absent such proof the presumption in favor of the correctness of the action of the trial court must prevail. Gordon v. State, 349 So.2d 554, 555 (Miss.1977). Therefore, Smith had the burden of providing evidence to the trial court sufficient to establish that the four hour delay between the accident and the drawing of his blood was attributable to the State (Lieutenant Bean), that the blood test results were rendered unreliable as a result of the delay, and that the admission of the test results would substantially prejudice his defense. Id. Smith argues that this burden was met and that the trial court erred in admitting his blood test results into evidence. In support of this argument, Smith relies chiefly on Mississippi Code Annotated section 63-11-8. This statute mandates that a test for determining blood alcohol content be performed on the operator of any motor vehicle involved in an accident resulting in "death." Miss.Code Ann. § 63-11-8(1) (Rev.2004). The statute further provides that such test "shall be administered within two hours of the accident, if possible." Id. (emphasis added). Smith argues that *314 because his blood was drawn more than two hours after the accident, the statutory time requirement was not satisfied; therefore, the test results should be excluded.
¶ 13. We first note that the case at bar does not involve a vehicle accident resulting in "death" under Mississippi Code Annotated section 63-11-8; rather, Smith was convicted under Mississippi Code Annotated section 63-11-30(5), aggravated DUI with injury. Second, Mississippi Code Annotated section 63-11-30(5) is silent as to a time within which a blood test must be administered in order to be admissible at trial. However, this Court has held that a two and one-half hour delay between the time of the accident and the time a blood sample was drawn did not prejudice the defendant, despite the two hour time frame found in Mississippi Code Annotated section 63-11-8. Wash v. State, 790 So.2d 856, 859(¶ 10) (Miss.Ct. App.2001). The basis of the Wash ruling was that there was no evidence of deliberate delay on the part of the arresting officers. Id. In Wash, this Court further determined that Mississippi Code Annotated section 63-11-8 provides that the test is to be administered within two hours of the accident, "if possible," and "were this two hour time frame necessary to ensure the [admissibility] of the test results, it is doubtful that the legislature would have included the `[if] possible' language in the statute." Id.
¶ 14. The case sub judice is much akin to Wash. Although the blood test was administered more than two hours after the accident, the record is devoid of any offering of proof on the part of Smith that the arresting officer deliberately delayed the acquiring of a blood sample. Bean testified that he offered Smith both a breath and blood test and both were refused. As a result of Smith's refusals, and based upon sufficient evidence in support of probable cause to suspect Smith of DUI, acquired both at the scene of the accident and at the police station, Bean was required to obtain a warrant for the removal of a sample of Smith's blood. Gazaway v. State, 708 So.2d 1385, 1387(¶ 8) (Miss. 1998). The State asserts, and this Court agrees, that any delay between the collision and the drawing of blood was reasonable under the circumstances and attributable solely to Smith, who put the State to the time consuming task of obtaining a warrant, late on a Saturday evening, and then transporting him to a local hospital where blood could be drawn. Accordingly, we find that Smith failed to meet his burden of proof by supporting his allegations of unreasonable delay with evidence and rests his argument entirely upon his own misinterpretation of Mississippi's implied consent law.
¶ 15. Furthermore, we disagree with Smith's contention that in order for his BAC to be admissible, the State must prove what his BAC was at the time of the accident. The effect of such a ruling would be to virtually abrogate chapter 11 of the Mississippi Code, the implied consent laws. The repercussions of such a holding would warrant an exclusion from evidence of all blood test results, obtained by virtue of a valid search warrant, based upon the assertion that the delay in acquiring the blood sample precludes the test results from assisting the jury in determining whether or not a defendant's BAC exceeded the legally permissible minimum level at the time of the accident. A proper analysis of questions of admissibility hinge on whether the contested information is relevant, meaning that the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Smith's BAC, measured four hours after the accident, is *315 relevant and admissible if, it has any tendency, no matter how slight, to aid the jury in determining whether or not Smith was intoxicated at the time of the accident. Id. This Court addressed this very issue in Acklin v. State 722 So.2d 1264, 1266(¶ 9) (Miss.Ct.App.1998) and held:
Absent any indication that, in the intervening time between the accident and the time his blood was drawn, Acklin had ingested additional alcohol, proof that Acklin's blood contained alcohol some two or two and a half hours after the accident would necessarily make it "more probable than it would be without the [test result]" that Acklin was under the influence of alcohol at the time of the accident.
Id. (citing M.R.E. 401).
¶ 16. In the case at bar, Smith concedes that he did not ingest any alcohol in the four hour interim between the accident and the drawing of his blood. The record indicates that Smith was under the supervision of the arresting officer throughout this time period and was not allowed to eat or drink anything. Based on these facts, and guided by Acklin, we hold that proof that Smith's blood contained alcohol, at a level over the legal limit, some four hours after the accident would necessarily make it more probable than it would be without the test results that Smith was under the influence of alcohol at the time of the accident. Smith failed to prove that the delay in acquiring his blood sample was unreasonable or the test results unreliable, or that any prejudice imposed upon him by the admission of the test results outweighed the probative value of the information in aiding the jury in making a determination as to whether it was more probable than not that Smith was under the influence of alcohol at the time of the accident. Accordingly, we see no reason to find that the admission of the blood test results was prejudicial to Smith in any way, and affirm the trial court's ruling on this issue.
II. WHETHER THE TRIAL COURT ERRED UNDER MISSISSIPPI RULE OF EVIDENCE 702 IN ADMITTING OPINION TESTIMONY OF THE STATE'S FORENSIC TOXICOLOGIST, BASED ON THE MATHEMATICAL CALCULATION OF RETROGRADE EXTRAPOLATION, ESTIMATING THAT SMITH'S BLOOD ALCOHOL CONTENT WOULD HAVE BEEN HIGHER AT THE TIME OF THE ACCIDENT THAN IT WAS AT THE TIME THE BLOOD SAMPLE WAS TAKEN?
¶ 17. Smith next argues that the trial court erred when it allowed the State's forensic toxicologist to testify that Smith's BAC would have been higher at the time of the accident than the level present at the time the blood sample was taken. The principal argument asserted by Smith is that Jochimsen's testimony was based on an application of retrograde extrapolation, a mathematical calculation which Smith's expert in forensic toxicology contends is an unreliable scientific method not generally accepted within the field of forensic science, and therefore inadmissible under Mississippi Rule of Evidence 702. The State argues that Jochimsen was properly qualified as an expert in forensic toxicology, she testified that retrograde extrapolation is a reliable scientific method used by many forensic toxicologists, and the jury was properly allowed to hear the opposing viewpoints of two qualified experts and decide which one to believe.
STANDARD OF REVIEW
¶ 18. "The admission of expert testimony is within the sound discretion of the trial judge." Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 34(¶ 4) (Miss. 2003). Therefore, the decision of a trial *316 judge will stand "unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion." Id.
DISCUSSION
¶ 19. At trial, Jochimsen testified that she applied a mathematical formula known as retrograde extrapolation to estimate what Smith's BAC would have been at the time of the accident. Jochimsen concluded that Smith's BAC would have been higher at the time of the accident than at the time the blood sample was drawn. Smith points to Mississippi Rule of Evidence 702 for his assertion that Jochimsen's testimony, estimating Smith's BAC at the time of the accident, should not have been admitted at trial. The admissibility of expert testimony is governed by Rule 702 of the Mississippi Rules of Evidence. Rule 702 states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
M.R.E. 702 (emphasis added).
¶ 20. The Mississippi Supreme Court has adopted a modified Daubert standard that our courts are to apply when ruling on the admission of expert testimony. McLemore, 863 So.2d at 35(¶ 7) (see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). In McLemore, the Mississippi Supreme Court articulated the modified Daubert standard as follows:
Under Rule 702, expert testimony should be admitted only if it withstands a two-pronged inquiry. Kansas City S. Ry. v. Johnson, 798 So.2d 374, 382 (Miss.2001). First, the witness must be qualified by virtue of his or her knowledge, skill, experience or education. Id. (citing M.R.E. 702). Second, the witness's scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue.
Id. at (¶ 7) (citing M.R.E. 702). Furthermore, "the party offering the testimony must show that the expert has based her testimony on the `methods and procedures of science,' not merely [her] subjective beliefs or unsupported speculation." Id. at 36(¶ 11). Then the trial judge must determine whether or not the expert testimony "rests on a reliable foundation and is relevant in a particular case." Id. (citing Daubert, 509 U.S. at 589, 113 S.Ct. 2786). The focus of the trial judge's analysis must be solely on principles and methodology, not on the conclusions they generate. Id. at 36-37(¶ 13).
¶ 21. The record reflects that a hearing was held outside the presence of the jury to qualify experts. However, the qualifications of the parties' experts are not at issue in this appeal. The record clearly indicates that both the State's and Smith's experts possessed substantial educational and occupational experience in the field of forensic toxicology, and had in fact been qualified as experts on numerous occasions; rather, Smith takes issue with the State expert's testimony regarding retrograde extrapolation. At the hearing, both experts testified that retrograde extrapolation is a mathematical calculation through which scientists attempt to predict an unknown value based on a known value or *317 series of known values. Jochimsen explained that she applied the known value (Smith's BAC at 1:00 a.m. on December 2, 2001) to a formula, using average values of human anatomy, physiology, alcohol absorption and elimination rates, and mathematical statistics, to estimate an unknown value (Smith's BAC at the time of the accident, approximately 9:00 p.m. on December 1, 2001). This calculation formed the basis of her opinion that Smith's BAC would have been higher at the time of the accident than it was at the time his blood was drawn.
¶ 22. Smith produced his own expert, Patrick Demers, Ph.D. Demers testified that retrograde extrapolation was an unreliable method of estimating Smith's BAC at the time of the accident because Jochimsen had to use assumed average values and had only one known value with which to operate. He argued that retrograde extrapolation required at least two known values between which an unknown value may be plotted. Demers claimed that without three points (two known and one previously unknown value calculated through retrograde extrapolation) an accurate line of measurement could not be established. Demers opined that retrograde extrapolation is only accurate up to a maximum of two hours, and that due to the four hour delay in acquiring the blood sample it would be impossible to estimate Smith's BAC at the time of the accident with any degree of scientific certainty. His testimony relied heavily on an article published in Supplement Number 10, of the July 1985 edition of the Journal of Studies on Alcohol. The article, authored by Kurt Dubowski, Ph.D., a widely recognized expert in the field of blood alcohol testing, concluded that "no forensically valid forward or backward extrapolation of blood or breath alcohol concentrations is ordinarily possible in a given subject and occasion solely on the basis of time and individual results." Kurt Dubowski, Ph.D., Absorption, Distribution, and Elimination of Alcohol: Highway Safety Aspects, Supp. 10 Journal of Studies on Alcohol 98, 106 (July 1985).
¶ 23. During rebuttal, Jochimsen testified that Dubowski was but one of many leaders in the field of blood testing, and that she relied on the entire body of knowledge available on the subject, rather than one article. Jochimsen testified that although retrograde extrapolation has its opponents, many of the world's leading alcohol blood testings scientists consider the method reliable and widely use the method to estimate BAC. Further, Jochimsen has used the method as a basis for her expert testimony on hundreds of occasions both in Mississippi and Arizona.
¶ 24. After hearing brief arguments from counsel, the trial judge ruled that the State had adequately shown Jochimsen's testimony to be based on the "methods and procedures of science," and relevant to the issue of whether or not Smith was likely intoxicated at the time of the accident. McLemore, 863 So.2d at 36(¶ 11) (citing Daubert, 509 U.S. at 589, 113 S.Ct. 2786). Jochimsen was allowed to explain her application of retrograde extrapolation to the jury, and give her expert opinion that Smith's BAC would have been higher at the time of the accident than the .13% present when his blood was drawn. However, Jochimsen was precluded from quantifying what Smith's BAC would have been at the time of the accident. The trial judge further ruled that Demers' testimony would be admitted to counter the testimony of Jochimsen, and the jury, as the finder of fact, would be allowed to decide which of the qualified expert opinions to accept.
¶ 25. Smith argues that the trial judge erred by allowing the jury to decide *318 which expert to believe. This Court disagrees. The trial judge's role as gatekeeper does not require that he become a scientist or expert himself. Id. at 40(¶ 25). In deciding whether or not a scientific method, such as retrograde extrapolation, is reliable, the trial judge may rely on the body of knowledge and research available in the field and discoverable through both expert testimony and independent research. Id. In the present case, the trial judge held an extensive hearing on the issue of Jochimsen's proffered testimony. He carefully considered testimony from both parties' experts, and concluded that their opinions were each based on facts, data, and methods that were scientifically reliable. The trial judge further determined both experts conclusions to be relevant to a material issue. This Court is confident that the learned trial judge exercised his gatekeeping responsibility as to the admission of Jochimsen's testimony in the precise manner in which the Mississippi Supreme Court intended, and we find no abuse of discretion.
¶ 26. What is more, this Court will not disturb a trial judge's decision to admit expert testimony solely on the basis of one party's disagreement with the conclusions reached by the opposing party's expert. "When experts reach different conclusions, the trial court is not required to exclude their testimony as long as it is relevant and is provided through some type of scientific basis." Lawrence v. State, 931 So.2d 600, 607(¶ 27) (Miss.Ct.App.2005) (citing Daubert, 509 U.S. at 589, 113 S.Ct. 2786). An application of Smith's logic would allow the State to argue, with equal fervor, that Demers' testimony should be excluded based solely on Jochimsen's testimony that retrograde extrapolation is a scientifically reliable method of estimating BAC. That, too, would be a misapplication of the modified Daubert standard. Here, the trial judge determined that Jochimsen's testimony was based on a scientific method recognized by many forensic scientists, and that her conclusions boasted an equal amount of support from the scientific community as the view propounded by Demers. Further, the trial judge determined that the testimony of both experts would aid the jury in determining whether Smith was under the influence of alcohol at the time of the accident. Acklin, 722 So.2d at 1266(¶ 9). Accordingly, we find no failure of the trial judge to properly exercise his Rule 702 gatekeeping responsibilities, and affirm the trial court's ruling on this issue.
III. WHETHER THE OFFICER'S REFUSAL TO ALLOW SMITH TO TELEPHONE HIS COUNSEL PRIOR TO THE COMPLETION OF THE BOOKING PROCESS WAS A VIOLATION OF SMITH'S RIGHT TO COUNSEL AND SHOULD RESULT IN THE EXCLUSION OF HIS BLOOD TEST RESULTS FROM EVIDENCE?
¶ 27. Smith's final argument is that Officer Bean's refusal to allow Smith to telephone counsel prior to the completion of the booking process violated his constitutional right to counsel. He asserts that because he was not allowed to contact counsel to aid him in determining whether or not to submit to the breath or blood tests, any BAC established from such tests should have been excluded. The State argues that Smith did not move to suppress the blood test results before or during trial on this ground and thus waived any right he may have had to complain on this issue.
DISCUSSION
¶ 28. After review of the record, we find the only mention of Smith's request for counsel to have occurred during cross-examination of Lieutenant Bean. Bean testified that Smith did not clearly invoke his right to counsel and that it was department *319 policy not to allow a DUI suspect to make a phone call until after booking. The trial record contains no motion to suppress Smith's blood test results on this basis, and the issue was not raised until the hearing on Smith's motion for a new trial. At the hearing, Smith argued that because he was under arrest at the time he was offered both the breath and blood tests, a critical stage of the proceedings against him had been reached and he had a right to counsel. The trial judge denied Smith's motion; he now raises the issue on appeal.
¶ 29. First, we recognize that "constitutional questions not asserted at the trial level are deemed waived." Pinkney v. State, 757 So.2d 297, 299(¶ 6) (Miss. 2000). Therefore, we do not address them here. This Court may only act on the basis of the official record. Saucier v. State, 328 So.2d 355, 357 (Miss.1976). We may not rule upon statements in briefs or arguments of counsel which are not reflected in the record. Id. However, the procedural bar notwithstanding, if this Court were to address Smith's argument that his blood test results should have been excluded on the basis of an alleged right to counsel violation, we would find the argument without merit.
¶ 30. When asked if he would submit to a breath or blood test Smith responded, "I'm not refusing, I need to talk to someone, an attorney or somebody." His response was ambiguous at best. This Court does not dispute that, "[w]hen a suspect invokes his right to counsel, all interrogation must cease." Grayson v. State, 806 So.2d 241, 247(¶ 11) (Miss.2001) (citing Edwards v. Arizona, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). "[H]owever, an ambiguous mention of possibly speaking with one's attorney is insufficient to trigger the right to counsel." Id. (citing Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (holding that statement of "Maybe I should talk to a lawyer" was insufficient to trigger right to counsel)).
¶ 31. Further, Mississippi's implied consent law clearly articulates the procedure regarding a DUI suspect's right to place a telephone call for legal or medical assistance, and the necessity of chemical testing to determine BAC. To this end, Mississippi's implied consent law provides: "[a]ny person who operates a motor vehicle upon the public highways, public roads and streets of this state shall be deemed to have given his consent, subject to the provisions of this chapter, to a chemical test or test of his breath for the purpose of determining alcohol concentration." Miss. Code Ann. § 63-11-5(1) (Rev.2004). The implied consent law further provides, "[a]ny person arrested under the provisions of this chapter shall be informed that he has a right to telephone for the purpose of requesting legal or medical assistance immediately after being booked for a violation under this chapter." Miss.Code Ann. § 63-11-5(4) (Rev.2004). The implied consent law defines "booked" as, "the administrative step taken after the arrested person is brought to the police station, which involves entry of the person's name, the crime for which the arrest was made, and which may also include photographing, fingerprinting, and the like." Miss.Code Ann. § 63-11-3(h) (Rev.2004). Our legislature clearly intended to give a person accused of DUI the right to counsel after booking, not before. Were we to hold that Smith had a constitutional right to counsel prior to being booked, we would in effect require the presence of counsel, upon request, before anyone arrested upon probable cause of DUI could be chemically tested for the presence of alcohol, and thereby declare Mississippi Code Annotated section *320 63-11-5(4) unconstitutional. This we are not prepared to do.
¶ 32. Furthermore, under the Sixth Amendment to the United States Constitution, the right to counsel attaches only at a "critical stage" in the proceedings against the accused. Porter v. State, 732 So.2d 899, 904(¶ 23) (Miss.1999). "A critical stage arises at any confrontation in which the results might affect the course of the later trial and in which the presence of counsel might avert prejudice at trial." Id. The right to counsel attaches earlier under Mississippi law than it does under the Sixth Amendment. Id. In Mississippi, the right to counsel attaches once the proceedings reach an "accusatory stage." Id. An "accusatory stage" occurs when a warrant is issued or, when the offender is compelled to appear and answer for the offense, as well as by indictment or affidavit. Id.
¶ 33. Even if this Court were to concede that a right to counsel arose upon arrest, rather than after issuance of the warrant, there is a question as to whether the requesting and taking of a blood sample may fall under the ambit of "custodial interrogation" sufficient to necessitate the protections of the Fifth Amendment right against self incrimination or the Sixth Amendment and Mississippi Constitution article 3, section 26 rights to counsel. "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Hampton v. State, 760 So.2d 803, 808(¶ 15) (Miss.Ct.App.2000). Obviously, Smith was in custody; however, the Mississippi Supreme Court has made clear that "there is no forced self-incrimination by obtaining a blood sample." Williams v. State, 434 So.2d 1340, 1344-45 (Miss.1983). Furthermore, both the Mississippi Supreme Court and the United States Supreme Court have made clear that state-compelled breath and blood test are "physical and real" evidence, not testimonial evidence, and therefore, unprotected by the Fifth Amendment. Ricks v. State, 611 So.2d 212, 215-16 (Miss.1992); See also Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Since the officers request for and taking of a blood sample cannot be considered custodial interrogation under the law, we cannot conclude that a violation of Smith's right to counsel occurred as a result of such tests being administered. Therefore, we conclude that Bean's refusal to allow Smith to telephone an attorney prior to completion of the booking process and before the issuance of the warrant was neither a violation of Smith's Sixth Amendment right to counsel nor a violation of his right to counsel under the laws of the State of Mississippi. While we have already disposed of this issue, we further find Smith's argument, regarding exclusion of evidence on the basis of an alleged violation of his right to counsel, baseless and without merit.
IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO FOLLOW THE SENTENCING GUIDELINES SET OUT IN MISSISSIPPI CODE ANNOTATED SECTION 47-5-1003 BY PLACING SMITH IN THE INTENSIVE SUPERVISION PROGRAM?
¶ 34. On cross-appeal, the State asserts that the trial court erred in applying the sentencing guidelines of Mississippi Code Annotated section 47-5-1003, by sentencing Smith to the intensive supervision program, under house arrest. The State argues that Smith should be classified as a violent offender. As a violent offender, Smith would be ineligible for the intensive supervision program. The State asks that *321 this Court remand the case for re-sentencing. Smith argues that there is no basis in the law for him to be classified as a violent offender and that the trial judge properly exercised his sentencing discretion by placing Smith in the intensive supervision program.
STANDARD OF REVIEW
¶ 35. Sentencing is within the sound discretion of the trial court and not subject to appellate review unless it exceeds the limits prescribed by statute. Nichols v. State, 826 So.2d 1288, 1290(¶ 10) (Miss.2002). "The general rule in Mississippi is that a sentence that does not exceed the maximum term allowed by the statute cannot be disturbed on appeal." Id. Further, a sentence that is within the statutorily defined parameters of the crime is usually upheld. Id. at 1290(¶ 12).
DISCUSSION
¶ 36. The State's request for re-sentencing rests on the assertion that persons convicted of aggravated DUI under Mississippi Code Annotated section 63-11-30(5) should be classified as violent offenders. On that basis, the State argues that the trial judge should have made an on-the-record designation of Smith as a violent offender. Smith would, therefore, be ineligible for the intensive supervision program, which limits participation to low risk and nonviolent offenders. Miss.Code Ann. § 47-5-1003(1) (Rev.2004). Smith asserts, and this Court agrees, that Mississippi Code Annotated section 47-5-1003 does not require the trial court to make an on the record determination that the accused is a violent offender. The statute mandates that persons convicted of sex crimes and felonies involving the sale of drugs shall be excluded from participation in the intensive supervision program. Miss.Code Ann. § 47-5-1003(1) (Rev.2004). Aggravated DUI does not fall within either of the excluded categories.
¶ 37. Furthermore, the statute under which Smith was convicted applies only to persons who operate a motor vehicle while either under the influence of alcohol or other substance impairing their ability to operate a motor vehicle, or any adult having a blood alcohol concentration of eight one-hundredths percent (.08%), (at the time of Smith's arrest the legal limit for an adult was a blood alcohol concentration of ten one-hundredths percent (.10%)) and who in a "negligent" manner permanently disables another. Miss.Code Ann. § 63-11-30(5) (Rev.2004). The statute does not label the offense as a violent crime. Furthermore, the United States Supreme Court has held that state DUI offenses, such as the one here, which require only a showing of negligence, cannot be considered crimes of violence. Leocal v. Ashcroft, 543 U.S. 1, 13, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). This Court follows the Leocal holding and declines to define aggravated DUI as a violent criminal offense.
¶ 38. The trial judge sentenced Smith to twenty years under the supervision of MDOC, with five years to be served in the intensive supervision program under house arrest, and the remaining fifteen years suspended pending successful completion of a five year supervised post-release period. In addition, Smith was ordered to pay $95,000 in restitution to the Richard Edward Barry Special Needs Trust. This sentence falls within the statutory sentencing range for aggravated DUI of "not less the five years and not to exceed twenty-five years." Miss.Code Ann. § 63-11-30(5) (Rev.2004). Therefore, Smith's sentence was a proper exercise of the trial judge's discretion and we decline to disturb the ruling on appeal.

*322 CONCLUSION
¶ 39. After a thorough analysis of the record and the law relevant to each of the issues presented on appeal, we conclude that: (1) the state crime lab test results were admissible despite the four hour delay between the time of the accident and the drawing of the blood sample; (2) the testimony of the State's forensic toxicologist was properly found by the trial judge to be based on reliable scientific methods and correctly admitted; (3) Smith's Sixth Amendment and state constitutional rights to counsel were not violated by the refusal of the arresting officer to allow Smith to telephone his counsel prior to the conclusion of the booking process; and (4) the sentence imposed by the trial judge was proper under the circumstances of the case and was not a misapplication of the statutory sentencing guidelines. Therefore, all rulings of the trial court complained of in this appeal are affirmed.
¶ 40. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED DRIVING UNDER THE INFLUENCE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS IN THE INTENSIVE SUPERVISION PROGRAM AND THE REMAINING FIFTEEN YEARS SUSPENDED PENDING SUCCESSFUL COMPLETION OF A SUPERVISED PERIOD OF POST-RELEASE FOR FIVE YEARS AND FINE OF $95,000 TO BE PAID TO THE RICHARD EDWARD BARRY SPECIAL NEEDS TRUST IS AFFIRMED ON DIRECT AND CROSS-APPEAL. ALL COSTS OF THE DIRECT APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE. ALL COSTS OF THE CROSS-APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.
KING, C.J., LEE, P.J., SOUTHWICK, CHANDLER, ISHEE, AND ROBERTS, JJ., CONCUR. IRVING, GRIFFIS, AND BARNES, JJ., CONCUR IN RESULT ONLY.