# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00297-COA

**MAURICE LAMAINE HARRIS A/K/A**       **APPELLANT**
**MAURICE L. HARRIS**

**v.**

**STATE OF MISSISSIPPI**             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/2018 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/16/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. A Scott County jury found Maurice Harris guilty of one count of attempting motor vehicle theft and one count of possession of methamphetamine. Harris now appeals, claiming that the trial court erred in limiting his trial testimony regarding his mental state during the crime and prior mental health issues. Finding no error, we affirm.

## FACTS

¶2. Around midnight in May 2016, Porfirio Vellegas Modesto heard his dogs barking outside his home in Forest, Mississippi. He looked out a window but saw nothing

suspicious. Even so, the dogs continued to bark; so Modesto put on some clothes and went outside to investigate. He walked to his red truck and retrieved his .38 revolver. He then went to his white 2016 GMC company-truck and walked around it, but he did not see anybody inside or outside the truck. He went to the driver's side and noticed the passenger's side door was open. Modesto went around the truck to the passenger side and saw an individual exiting that door. The man had his hand in his pocket. Feeling scared and wanting to protect his family, Modesto fired his pistol at the man several times. Harris was hit in the chest and fell to the ground. Someone in Modesto's family called an ambulance immediately.

¶3. Officer Dewayne Robinson of the Forest Police Department was the first person on the scene. When he arrived, he saw Harris on the ground leaning up against the white truck with blood coming from his shirt. Modesto was on the opposite side of the truck holding a gun. Officer Robinson took the gun from Modesto and secured it in his patrol car.

¶4. Robinson and the other officers arriving after him were wearing body cameras that captured events at the scene. The footage was entered into evidence and played for the jury. Officer Robinson spoke to both Modesto and Harris. Modesto told the officer that he shot Harris, and fired his gun at least three times. He did not know Harris, and Harris did not have permission to use his truck. Modesto was taken into custody for questioning.

¶5. Harris appeared to be shot twice to the chest and abdomen. Harris admitted to Officer Robinson he had some "dope" on his person. He took it out of his pocket and threw it under the truck. Officer Robinson retrieved the substance and secured it in an evidence bag, which

2

was put in his patrol car. Forensic tests later determined the substance to be 1.081 grams of methamphetamine. Officer Robinson also found liquor and what appeared to be marijuana near Harris in a plastic bag. He testified Harris seemed to be under the influence of drugs or alcohol. While waiting for the paramedics, Harris told Officer Robinson he was not trying to steal the truck; he thought it was given to him by God as a gift, but he was "misled" by a voice in his head. He was just trying to get a ride to the casino to enjoy himself. Harris apologized and prayed for forgiveness from God and Modesto. Due to the severity of Harris's injuries, he was airlifted to the hospital.

¶6.    When Forest Police Investigator Nathan Yates arrived at the scene, he spoke with the officers who arrived earlier. Investigator Yates found drugs on the scene, which were collected for evidence. Harris had already been airlifted, but four months after the shooting Yates interviewed him. At that time, Harris waived his rights and provided a verbal and written statement; he did not appear to be under the influence of drugs or alcohol. A suppression hearing was held at trial, with the trial court finding the statement was voluntary and admissible. Similar to the statement he gave Officer Robinson four months previously at the scene, Harris wrote: "I felt God had [done] something great for me and that the truck was a ride to get me where I needed to be in life. As I told God, I was misled by an evil spirit but God stood up for me." Harris also prayed for the court and Modesto to forgive him.

¶7.    Harris testified in his own defense, maintaining that he was not attempting to steal the truck or anything in it. Harris began to testify about having "a medical issue" where he

3

had been hospitalized for hearing voices and recently denied his medication. However, the State interrupted the testimony with an objection that Harris seemed to be going into an insanity defense, which had not been raised and was not properly before the court. The trial court as well as defense counsel agreed, and the judge instructed Harris's defense counsel to explain to Harris not to testify further "in this vein." Counsel spoke with Harris alone, and then Harris's examination continued. He admitted to having drugs with him that night, but not methamphetamine. When he made his statement to law enforcement, Harris asked forgiveness from Modesto because he came to realize the truck was not a gift from God.

## ANALYSIS

¶8.     Harris argues that the trial court erred in limiting his testimony about his mental health issues, thereby preventing Harris from presenting his mistaken-belief defense. Harris claims the testimony he began to relate about his mental health issues and their previous treatment was relevant, and he had a fundamental right to testify in his own defense about these matters.

¶9.     This Court's standard of review for the admission or exclusion of evidence is abuse of discretion. *Smith v. State*, 942 So. 2d 308, 313 (¶11) (Miss. Ct. App. 2006). Further, even if evidence is erroneously admitted or excluded, this Court will not reverse unless the error affects a substantial right of a party. *Id.*

¶10.    At the beginning of defense counsel's direct examination, before the State objected, the following colloquy occurred:

> Q.     Mr. Harris, you were charged with attempting to steal the vehicle that night. Did you -- were you attempting to steal the vehicle?

4

A.      No, sir. No, sir. I never had intentions on stealing it and never had any indication where I had tried to break or steal anything out of the vehicle. Like I said, I had a medical issue. I had done been to East Mississippi about this same situation with the voices that I'd be hearing sometimes in my head, and I have also been to the Crisis Center twice for this same situation. They denied me of my medical pills that I'm supposed to take, and so I don't -- I had drunk a little beer [–]

After the State objected, a discussion occurred outside of the hearing of the jury:

[THE PROSECUTOR]: My position right now would be that it looks like we're getting a little far into an insanity defense.

[DEFENSE COUNSEL]: Yeah, I didn't know that was fixing to go out of the mouth.

[THE COURT]: I think that we're going to need to, at a minimum, have you instruct your client that that's not where [your] defense is. We don't need to hear any more about that.

[DEFENSE COUNSEL]: Okay. . . .

Defense counsel proceeded to state that there was no notice of an insanity defense and agreed it would be an improper development in the trial. The trial judge told Harris's defense counsel to instruct Harris that insanity was not his defense theory and he should refrain from testimony regarding medical insanity. Having done so, counsel continued his examination of Harris, who maintained he did not intend to steal the truck and was shot twice in the chest, even though he told Modesto he was unarmed. On cross-examination, Harris explained he had left his stepson's house at 10:30 p.m. and was trying to hitchhike back to Hillsboro, Mississippi, when he walked past Modesto's property. Harris then started to testify again about hearing voices. The State renewed its objection, which was sustained. Harris continued his testimony about his written statement and comments in the video where

5

he said the truck was "a gift from God." However, there was never a proffer as to the testimony Harris was prevented from making.

¶11. Harris now claims the trial court incorrectly assumed he was trying to raise an insanity defense. He further argues even if raising an improper insanity defense, limiting his testimony was still error.

¶12. First and foremost, there was no error preserved before the trial court over this issue. It is well established that the trial court cannot be held in error for an issue not presented to it. *Pitchford v. State*, 45 So. 3d 216, 232 (¶57) (Miss. 2010). Further, "[t]he failure to make a contemporaneous objection serves as a waiver of any error." *Washington v. State*, 957 So. 2d 426, 429 (¶13) (Miss. Ct. App. 2007). Defense counsel not only failed to object to limiting Harris's testimony, but actually agreed that Harris's testimony was improperly verging on an insanity defense. This issue is waived.

¶13. Relatedly, if the trial court and prosecution were under the false impression that Harris was raising an insanity defense, so was his defense counsel, because he agreed with the limitation. Moreover, Harris was allowed to develop his theory of the case – mistaken belief – even though he was limited in his testimony about mental illness. Harris was charged with attempt to take a motor vehicle. The State was required to show that Harris had the intent to steal the vehicle. *See Brown v. State*, 633 So. 2d 1042, 1044 (Miss. 1994) (an attempt to commit a crime consists of an intent to commit a particular crime). Harris's mistaken-belief defense was that he did not have the requisite intent to steal the truck because he believed God had provided him the truck; however, he was in fact mistaken.

6

¶14. Harris was allowed to present testimony and evidence on this theory throughout trial. On the body-camera video, Harris tells Officer Robinson he did not intend to steal the truck, but it was a gift from God. The jury was allowed to watch the entire video and also hear Harris state he was misled by the voices in his head. During Harris's interview and written statement before Investigator Yates several months after the crime, Harris makes similar pronouncements about God providing him the truck to "get me where I needed to be in life," but he was misled by an evil spirit. We fail to see how Harris's defense was prejudiced by a limitation on his testimony about matters related to his mental health. The jury found Harris had the requisite intent for attempt to take a motor vehicle beyond a reasonable doubt.

¶15. Because there was no error preserved for this issue on appeal, it is waived. It is also without merit.

¶16. Accordingly, Harris's conviction is affirmed.

¶17. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**